UNITED STATES, Appellee

v.

Hukin WHITE, Master Sergeant
U.S. Army, Appellant.

No. 95–0905.
Crim. App. No. 9300943.

U.S. Court of Appeals for
the Armed Forces.

Argued May 22, 1996.

Decided Sept. 30, 1996.

For Appellant: *Lida Stout Haskett* (argued); *Captain Walter R. Dukes* (on brief).

For Appellee: *Captain David F. Musel* (argued); *Colonel John M. Smith, Lieutenant Colonel Eva M. Novak,* and *Major Lyle D. Jentzer* (on brief).

*Opinion of the Court*

SULLIVAN, Judge:

Appellant was tried by a general court-martial composed of officer members at Fort Devens, Massachusetts, during April and May of 1993. Contrary to his pleas, he was found guilty of rape, in violation of Article 120, Uniform Code of Military Justice, 10 USC § 920. The members sentenced appellant to a dishonorable discharge, confinement for 10 years, total forfeitures, and reduction to Private E–1. The convening authority approved the sentence on October 20, 1993. On May 31, 1995, the Court of Criminal Appeals affirmed the findings and sentence without opinion.

On June 20, 1995, this Court granted review on the following issue raised by appellant:

WHETHER THE EVIDENCE IS SUFFICIENT TO CONVICT [APPELLANT] OF RAPE.

We hold that the evidence is legally sufficient to sustain appellant's conviction for rape. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *United States v. Turner*, 25 MJ 324 (CMA 1987).

The record of trial shows, *inter alia*, that DL, the alleged victim in this case, was a 26–year–old mildly retarded woman. She was employed at the Natick Army Labs Dining Facility as a dining room attendant by Work Inc., a firm which employs "special needs individuals," among others. Appellant worked at the dining facility on the weekends during his off-duty time. He also was employed by Work Inc.

DL testified that on the evening of October 18, 1992, all dining-facility employees left between 6:30 and 7:00, with the exception of herself and appellant. DL said that she was completing her work at the facility and waiting for her bus, provided by Work Inc., to pick her up and take her home. She stated that appellant was doing "sex with" her and that "he had the thing in" her and that this activity took place "[n]ear the stove in the kitchen" of the Natick Dining Facility. She further stated that appellant held her arms above her shoulders and that she told appellant no. She also testified that the bus driver, Rosa, came in and saw her on the floor after appellant had heard Rosa calling and ran away. She testified she was wearing her work uniform at the time of the assault and that, afterwards, she went to the bathroom to change into her street clothes before going home. Finally, she testified that she told Rosa Petral about this incident with appellant and Rosa told her "Go home, tell your parents."

DL further testified that when she arrived home, she told her mother that appellant had assaulted her that day and on two prior occasions that she had not reported. She then went into the bathroom and asked her mother to come in to see that she was bleeding. Her panties were heavily stained. As a result, her parents took her to the Brigham and Women's Hospital in Boston where she was treated in the emergency room.

Mrs. L, the victim's mother, testified about the hospital visit. The attending doctor confirmed the bleeding was not menstrual but was caused by a tear. Subsequently, Jeanne Berk was assigned to be DL's nurse. Ms. Berk proceeded to carry out the sexual assault protocol and to collect certain evidence. She collected DL's saliva, hair from the head and pubic area, specimens from the vagina, and anything else from the body that could be of importance. Ms. Berk also observed bleeding from DL's vaginal area. Later that night, Dr. Paul Isaacson completed the overall assessment and checked for any other injuries. He testified that DL had blunt abrasions to her hymenal ring. The injuries might have been caused by a penis, fingers, or any blunt object, but whatever the object was that penetrated the vagina, the hymen was still intact and the penetration was only an inch.

Mary Thrasher, a dining facility supervisor, testified that on Monday, October 19, 1992, she searched both the male and female latrine for clothing. She bagged and tagged two work uniforms belonging to DL. All uniforms were marked with name tags. Ms. Thrasher testified that the clothes hamper was filled to the top, and that DL's uniform was on top of the pile. She stapled an index card dated October 18, 1992, to that uniform and placed it in a plastic bag. Next came a uniform marked "Kathy," and below that was another one of DL's on which Ms. Thrasher stapled an index card marked October 17, 1992. She placed the bagged uniforms in a safe. Those uniforms were later sent to the state crime lab for analysis. Laboratory testing procedures on the uniform labeled October 18, 1992, revealed no physical evidence of appellant's body fluids. Testing of the uniform marked October 17, 1992, revealed the presence of appellant's DNA contained in ejaculate stains.

Evidence was also introduced that sperm was found on the leg band of the panties DL

was wearing. A chemist, Mary Lumley, testified that she had found the sperm cells on the elastic leg band area. The two sperm cells she found were not enough to enable further examination. There also was a common urine stain on both DL's panties and work pants.

Appellant testified and denied touching or having any sexual contact with DL at any time. He explained that he used the women's latrine late on the evening of October 17 to wash himself and apply medication to his body for a skin condition. He said that during application of the medication, he became sexually aroused and masturbated. He had gone into the women's latrine because the men's latrine was out of soap. After achieving orgasm, he reached into the hamper and retrieved an item of clothing to wipe and clean his hands.

Rosa Peral, the bus driver for Work, Inc., testified that she picked up her evening "clients" anytime between 5:30 and 7:30 p.m. On Sunday, October 18, 1992, Ms. Peral picked up DL from the dining facility. Upon arrival, she went to the kitchen and walked through the open back door. She saw DL standing with her elbow on the stove, facing down the hallway and laughing. She also saw appellant standing by the door between the kitchen and the CQ desk, "talking with someone," and she could hear the other voice. She stated that DL got on the bus with Ms. Peral, but that during the 30 to 45–minute drive to her home, DL never mentioned what had allegedly transpired with appellant. She also testified that she did not see any blood on DL at that time.

Finally, some evidence was admitted that the work pants DL was wearing at the time of the rape were not bloodied. Ms. Lumley, however, testified that the cotton panties would not transfer the blood stain to the work pants until the panties themselves became saturated. This lack of blood transfer, she asserted, would be consistent with DL changing out of her uniform immediately after being raped.

\* \* \*

■ Appellant contends that the evidence of record at his court-martial is legally insufficient to support his conviction for the rape of DL. He acknowledges that the test for legal sufficiency employed by this Court is drawn from the Supreme Court decision in *Jackson v. Virginia*, 443 U.S. at 319, 99 S.Ct. at 2789, and from our own decision in *United States v. Hart*, 25 MJ 143 (1987). Most recently, in *United States v. Pabon*, 42 MJ 404, 405 (1995), we stated this test as follows:

> Our general inquiry is "whether after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact *could* have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. at 319, 99 S.Ct. at 2789 (last emphasis added). Such a limited inquiry reflects our intent to "give[ ] full play to the *responsibility of the trier of fact* fairly to resolve conflicts in the testimony, to weight the evidence, *and to draw reasonable inferences* from basic facts to ultimate facts." 25 MJ at 146, quoting *Jackson v. Virginia*, 443 U.S. at 319, 99 S.Ct. at 2789 (emphasis added).

The first step in applying this test is to identify the elements of the crime which the prosecution was required to prove. Appellant was found guilty of rape, in violation of Article 120. The version of the Manual for Courts–Martial, United States, 1984, in effect at the time of the offense, explains the elements of this offense as follows:

> (a) That the accused committed an act of sexual intercourse with a certain female;
>
> (b) That the female was not the accused's wife; [*] and
>
> (c) That the act of sexual intercourse was done by force and without her consent.

Para. 45b, Part IV, Manual, *supra; see generally United States v. Bonano–Torres*, 31 MJ 175, 178–79 (CMA 1990).

---

\* Article 120, Uniform Code of Military Justice, 10 USC § 920, was amended effective October 23, 1992, eliminating the "with a female not his wife" requirement. *See* Pub.L.No. 102–484, Div. A, Title X, Subtitle G, § 1066(c), 106 Stat. 2506. Appellant's crime was alleged to have occurred on or about October 18, 1992.

The testimony of DL constituted evidence from which a reasonable factfinder could find beyond a reasonable doubt each of these elements. *See United States v. Webster,* 40 MJ 384 (CMA 1994); *United States v. Polk,* 32 MJ 150 (CMA 1991) (victim's testimony sufficient to establish offense); *see also United States v. Palmer,* 33 MJ 7 (CMA 1991). DL testified that appellant was doing "sex with" her and that "he had the thing in me." She also testified that "he was holding my hands up there [indicating above her head]." Finally, she stated that she told him "no"; that she didn't want him to do that; and that she was not married.

Nevertheless, appellant argues that DL's testimony was not legally sufficient because she had the mental ability of an 8–year–old; she was repeatedly contradicted by herself and other witnesses at trial; and she had extremely poor character for truthfulness. We note, however, that there was no motion by the defense to declare the alleged victim incompetent as a witness because of her mental ability or lack thereof. *See generally United States v. Morgan,* 31 MJ 43, 47–48 (CMA 1990); Mil.R.Evid. 601 and 602, Manual, *supra.* Moreover, there is simply no rule of evidence which precludes witnesses from testifying or renders their testimony legally insufficient because they contradict themselves or are contradicted by others in their trial testimony. Appellant was permitted to use evidence of the prosecutrix's mental inability, the instances of inconsistency and contradiction, and her poor character for truthfulness to attack her credibility. *See* Mil.R.Evid. 607 and 608. Accordingly, this legal-insufficiency argument must fail.

Appellant also relies on the decision of this Court in *United States v. Cage,* 42 MJ 139 (1995), to support his argument of legal insufficiency. He notes that in *Cage,* this Court held that physical evidence of injuries to the victim consistent with both rape and "rough handling" not involving rape was not legally sufficient to establish the "corpus delicti" of rape. Appellant points out evidence that DL's hymenal ring was intact although it had been penetrated about one inch. He argues this evidence is consistent with masturbation by the victim and not rape.

We note that in *Cage,* the alleged victim was unable to testify to the act of rape because of her alcohol consumption and poor memory. The physical evidence, found to be ambiguous and speculative, stood alone. Here, DL did testify that an act of sexual intercourse against her will and by force had occurred. Thus, the legal-insufficiency rationale of *Cage* is clearly not applicable in appellant's case.

Finally, appellant makes a reasonable-doubt argument to secure reversal of his conviction on legal insufficiency grounds. *See Turner,* 25 MJ at 325 ("For factual sufficiency, the test is whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, the [factfinders] are themselves convinced of the accused's guilt beyond a reasonable doubt."). He phrases his argument as follows:

> The incredible, internally inconsistent testimony of the alleged victim herself standing alone, was enough to raise reasonable doubt. [DL]'s testimony taken together with the testimony of the numerous defense *and* the government's own witnesses, combined with the outstandingly good military character of Master Sergeant White, leave no other conclusion but that Master Sergeant White was wrongfully convicted.

Final Brief at 5–6.

We respond that this Court does not determine guilt or innocence, and that the above argument was made to the properly authorized factfinders who rejected it. *See* Art. 67(c), UCMJ, 10 USC § 867(c)(1994) ("The Court of Appeals for the Armed Forces shall take action only with respect to matters of law.").

The decision of the United States Army Court of Criminal Appeals is affirmed.

Chief Judge COX, Judges CRAWFORD and GIERKE, and Senior Judge EVERETT concur.