UNITED STATES, Appellee

v.

Robert R. CAULEY, Gunnery Sergeant
U.S. Marine Corps, Appellant.

No. 95–1007.
Crim.App. No. 93–0175.

U.S. Court of Appeals for
the Armed Forces.

Argued May 7, 1996.

Decided Sept. 30, 1996.

For Appellant: *Captain J.F. Havranek,* USMC (argued).

For Appellee: *Captain D.K. Margolin,* USMC (argued); *Colonel Charles Wm. Dorman,* USMC and *Commander D.H. Myers,* JAGC, USN (on brief).

*Opinion of the Court*

SULLIVAN, Judge:

Appellant was tried by a general court-martial composed of officer and enlisted members at Marine Corps Recruit Depot, San Diego, California, during March and April 1992. Contrary to his pleas, he was found guilty of violating a general order, rape, and forcible anal sodomy, in violation of Articles 92, 120, and 125, Uniform Code of Military Justice, 10 USC §§ 892, 920, and 925, respectively. He was sentenced to a dishonorable discharge, confinement for 5 years, total forfeitures, and reduction to pay grade E–1. The convening authority approved the sentence on December 14, 1992. The Court of Criminal Appeals in an unpublished opinion affirmed on April 7, 1995.

On December 28, 1995, this Court granted the following issues:

## I

WHETHER THE FACTS ARE SUFFICIENT, AS A MATTER OF LAW, TO SUPPORT A FINDING OF GUILTY TO RAPE WHERE THE ALLEGED VICTIM TESTIFIED THAT PRIOR TO LEAVING WITH APPELLANT SHE BELIEVED THAT HE INTENDED TO ENGAGE IN SEXUAL INTERCOURSE, SHE CONCEDED APPELLANT DID NOT FORCE HER TO HAVE SEX, SHE OFFERRED NO RESISTANCE DURING INTERCOURSE, AND NO PHYSICAL EVIDENCE CORROBORATED HER STALE ACCUSATION THAT APPELLANT RAPED HER.

## II

WHETHER THE MILITARY JUDGE ERRED WHEN HE DENIED APPELLANT'S EXPERT WITNESS REQUEST FOR A DETECTIVE WITH OVER 20 YEARS OF EXPERIENCE INVESTIGATING RAPES AND DEALING WITH RAPE VICTIMS, AND THEREBY PREVENTING APPELLANT FROM PRESENTING THE DEFENSE THEORY OF THE CASE AND FROM REBUTTING THE TESTIMONY OF THE GOVERNMENT'S WITNESS.

We hold that the evidence is legally sufficient to sustain appellant's conviction for rape. *See generally Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *United States v. Hart,* 25 MJ 143 (CMA 1987). We further hold that the military judge did not err in denying the defense request for an expert witness in "sex crimes investigation." *See generally United States v. Carter,* 26 MJ 428 (CMA 1988).

The Court of Criminal Appeals summarized the evidence of record in this case as follows:

At the time of the offenses, the appellant was the noncommissioned officer-in-charge (NCOIC) of a Marine Corps recruiting station in Waco, Texas. The victim, PFC C,

enlisted in the Marine Corps reserves and was placed temporarily in the inactive Delayed Entry Program awaiting a date to report to boot camp. On Friday, 12 July 1991, the weekend before she was to report to the local military entrance processing station for medical screening, the victim and her husband went to Kelley's, a bar in Waco. They met her recruiter, SGT R, and his wife, two other women and the appellant, and spent the evening drinking and dancing. The victim's husband left for home about midnight to check on their baby-sitter. The victim declined to accompany him and stated that she would get a ride from someone else. At about 0130, the appellant, the victim and one of the other women were all that remained at Kelley's. The victim asked the appellant for a ride home and, according to her and the other women, she and the appellant left Kelley's at the same time. The victim testified that when she was in the appellant's car, he announced that he was taking her to his place and not to her home. At that point, she assumed that he intended to have sex with her but she did not protest or take advantage of any opportunity to leave the vehicle. She entered his trailer without protest and neither resisted nor cooperated when he took her clothes off and placed her on his bed, although she did tell him that she did "not want to do this." He climbed on top of her, forced her legs apart with his legs, and penetrated her vagina over her verbal protests. He then turned her over and anally penetrated her, which she physically resisted, and then penetrated her vagina a second time. In her own words, she "curled up" and went to sleep. The next morning, he took her home and threatened to harm her if she told anyone about the incident. The appellant instructed her to tell her husband that she spent the night at the home of one of the women at Kelley's.

Upon her husband confronting her the next morning, the victim told him the false story about spending the night with the other woman. Her husband checked out the story with the other woman and determined that it was false. The next day,

Sunday, 14 July, the victim told that the appellant had raped her. On the following Monday or Tuesday, the victim's husband confronted the appellant over his wife's allegations, and the appellant invited him to call the commanding officer. The victim's husband declined to do so. Appellate Ex. XLIX.

On Monday, 15 July, when SGT R came to PFC C's home to take her for medical screening, she refused to go. (R. 329) Upon his demand to know why she refused, she responded that the appellant raped her. SGT R testified to the above without objection from the defense. When he was questioned on the witness stand as to why he did not report PFC C's allegation of rape, he stated that she asked that he not do it because she "had been through this before and nothing came of it."

The victim did eventually report for recruit training. Although she was interviewed extensively about possible misconduct during the recruitment process and other features of her personal life, she did not reveal the incident with the appellant. Following several weeks of training, particularly in sexual harassment, she decided to report the incident to law enforcement authorities and did so on 29 September 1991, approximately 2½ months after it occurred. (R. 224).

\*     \*     \*

The second witness, a Detective Touchton, a member of the Dallas Police Department and a 40–year veteran of law enforcement, was offered as an expert in "sex crime investigation." He would testify concerning the absence of any physical evidence and the other missing holes in the investigation into the allegations by PFC C and, as well, to his expert opinion that PFC C's conduct after the attack was consistent with those who report false allegations. (R. 54) Appellant Ex. III.

Unpub. op. at 2–4.

I

The first granted issue asks whether a finding of guilty to rape can be legally

sustained on the basis of certain facts averred by appellant to exist in his case. This was a contested case, however, and what the particular facts were that the members found in reaching their verdict are not before us. *Cf.* RCM 918(b), Manual for Courts–Martial, United States, 1984 (provides for request for special findings in trial by judge alone). More importantly, factual sufficiency is a question for the factfinder at court-martial and the Court of Criminal Appeals, not this Court. *See United States v. White,* 45 MJ 345 (1996). Our concern is legal sufficiency, that is, whether the appropriate factfinder can lawfully find an accused guilty of a crime based *on the evidence* before it. *Id.*

Appellant was found guilty of the rape of DC on July 12, 1992. Art. 120 and para. 45, Part IV, Manual, *supra.* To convict him of this offense the prosecution was required to prove beyond a reasonable doubt the following elements:

(a) That the accused committed an act of sexual intercourse with a certain female;

(b) That the female was not the accused's wife; and

(c) That the act of sexual intercourse was done by force and without her consent.

Para. 45b(1), Part IV, Manual for Courts–Martial, United States, 1984.

At trial, the defense attacked the alleged victim's credibility and asserted that it and a lack of physical evidence created a reasonable doubt that she even went to appellant's trailer that night and engaged in sexual intercourse with him. On appeal, he contends that her testimony, even if believed on those matters, is legally insufficient to show sexual intercourse was accomplished "by force and without her consent." We disagree.

█ It is well-established that a court-martial, in determining whether force and lack of consent occurred, must consider the totality of the circumstances presented in the case before it. *See United States v. Webster,* 40 MJ 384, 386 (CMA 1994). Force can be "actual or constructive." *United States v. Hicks,* 24 MJ 3, 6 (CMA 1987). More particularly, "[w]here intimidation or threats of death or physical injury make resistance fu-

tile, it is said that 'constructive force' has been applied." *United States v. Palmer,* 33 MJ 7, 9 (CMA 1991). Furthermore, intimidation or threat may be "expressed or implied." *Hicks,* 24 MJ at 6. Similarly, a finding of lack of consent does not require proof that the witness physically resisted her attacker. *See Webster,* 40 MJ at 386. A lack of consent can be manifested by the victim in a number of ways other than physical resistance.

Turning to appellant's case, we note that he has cited certain portions of the victim's testimony and the absence of physical evidence to support his argument that rape did not legally occur. These circumstances, if found to exist by the members, would indeed logically suggest or provide a basis for inferring that appellant did not use force to have sex with an unwilling Ms. DC. However, other evidence was admitted in this case tending to prove different factual circumstances which provide a basis for concluding that appellant used force to overcome the alleged victim's lack of consent. *See United States v. Bonano–Torres,* 31 MJ 175, 178–79 (CMA 1990).

█ In performing our legal review, of course, we are not limited to appellant's narrow view of the record. *United States v. McGinty,* 38 MJ 131, 132 (CMA 1993). Here, the record shows that the alleged victim testified in this case that before the sexual intercourse she told appellant "no" and "no a couple more times" and that she "wanted to go home." She also testified that she turned her face when he attempted to kiss her, and that he used his legs to pry her legs open. Also, she testified that she did not further resist because she "was afraid of getting hurt." Finally, she testified that appellant told her if she "told anybody that he would get a gun and shoot me because this is his life-the Marine Corps is his life and that he didn't want anybody ruining it." We hold that the factfinder had sufficient evidence before it to conclude beyond a reasonable doubt that force was used and that lack of consent existed in this case. *See United States v. Bradley,* 28 MJ 197, 201 (CMA 1989) (evidence of limited resistance and ex-

pression of lack of consent to a drill instructor found sufficient).

## II

■ The second granted issue concerns the military judge's denial of a defense request for Detective Touchton as an expert witness on "sex-crimes investigation." The defense sought this testimony based on the following proffer:

a. Detective Touchton has been with the Dallas Police Department for over 40 years. He has served as a Detective for 21 of these years. During his career, he has investigated hundreds of rape cases. He is extremely familiar with the evidence normally associated with sex crimes and the signs indicating false allegations of sex crimes. Detective Touchton will be offered by the Defense as an expert in sex crime investigation. He will review the documentation prepared by NIS during their investigation of these allegations *and offer his expert opinion as to how thorough this investigation was.* He will also offer his opinion as to what is missing in the investigation. *Additionally, Detective Touchton will testify that most sex crimes* involving rape and sodomy usually include complaints of pain from the alleged victim. This is especially true in the case of forcible unlubricated sodomy, where the victims will require medical attention for rectal tearing. This evidence is relevant and material to rebut [DC]'s allegations that she was raped by Gunnery Sergeant Cauley. *Detective Touchton will offer his expert opinion that [DC]'s conduct before, during and after the alleged attack was inconsistent with that of the rape victims he has seen. In fact, [DC]'s conduct that evening falls into the typical scenario for a false allegation.*

(Emphasis added.) At trial, defense counsel additionally asserted that the testimony should be admitted to rebut the prosecution's expert testimony on rape trauma syndrome.

The military judge denied the defense's request. He ruled that Detective Touchton had not been shown to be an expert in "rape trauma syndrome" and that, otherwise, his proposed testimony "would amount to a comment on the credibility of the government's witness." Finally, the judge concluded testimony on the propriety of the pretrial investigation in this case from one expert would open the door to opposing experts for the Government, and he suggested such a dispute was unnecessary. We agree.

The question before these members was whether appellant raped Ms. DC. Logically, we note that a defective pretrial investigation by the Naval Investigation Service does not necessarily help the defense if the prosecution's evidence at trial established his guilt. Moreover, as noted by the court below, "the explanation for the absence of traditional physical evidence of a sexual attack [in appellant's case] was obvious, given the 2½ month delay between the incident and time it was reported." Unpub. op. at 5. In any event, appellant was permitted to point out to the members the obvious lack of physical evidence in this case and argue that he should not be convicted without demonstrative evidence of these crimes. *See also United States v. Davis,* 44 MJ 13, 17 (1996) (demonstrative comparison evidence of shoe prints and molds may render expert testimony unnecessary).

■ Turning to the other aspects of the proffered testimony of Detective Touchton, we find no constitutional or evidentiary error (abuse of discretion) in the military judge's ruling denying this defense requested witness. *See generally Montana v. Egelhoff,* — U.S. ——, 116 S.Ct. 2013, 135 L.Ed.2d 361 (1996) (various Supreme Court Justices express views on possible due process limitations on a jurisdiction's rules of evidence); *United States v. Garcia,* 44 MJ 27, 31 (1996). There was no evidentiary foundation established in this case by the defense qualifying Detective Touchton as an expert in rape trauma syndrome. *United States v. Carter,* 26 MJ 428, 429–30 (CMA 1988). *See* Mil. R.Evid. 702–03, Manual, *supra.* Moreover, an accused has no evidentiary or constitutional right to rebut a government expert in rape trauma syndrome with testimony from an unqualified expert in another field. *Id.* Finally, we agree with the military judge and the court below that the detective's testimony

regarding false allegation scenarios and physical sodomy complaints was no more than an attempt to attack the alleged victim's character for truthfulness. Such expert testimony on credibility is not admissible at courts-martial. *See United States v. Marrie,* 43 MJ 35, 41 (1995); *United States v. Arruza,* 26 MJ 234, 237 (CMA 1988); *cf. United States v. Meeks,* 35 MJ 64 (CMA 1992).

The decision of the United States Navy–Marine Corps Court of Criminal Appeals is affirmed.

Chief Judge COX, Judges CRAWFORD and GIERKE, and Senior Judge EVERETT concur.