UNITED STATES, Appellee,

v.

Troy D. HUGHES, Senior Airman,
U.S. Air Force, Appellant.

No. 98–1129.
Crim.App. No. 32359.

U.S. Court of Appeals for
the Armed Forces.

Argued Oct. 20, 1999.

Decided March 10, 2000.

EFFRON, J., delivered the opinion of the Court, in which CRAWFORD, C.J., GIERKE, J., and COX, S.J., joined. SULLIVAN, J., filed an opinion concurring in the result.

For Appellant: *Captain Karen L. Hecker* (argued); *Lieutenant Colonel Jeanne M. Rueth, Lieutenant Colonel Ray T. Blank, Jr.,* and *Major Carol L. Hubbard* (on brief); *Colonel Douglas H. Kohrt.*

For Appellee: *Captain Peter J. Camp* (argued); *Colonel Anthony P. Datillo, Lieutenant Colonel Ronald A. Rodgers,* and *Captain Milissa A. Burke* (USAFR) (on brief); *Captain Steven D. Dubriske.*

Judge EFFRON delivered the opinion of the Court.

A general court-martial composed of officer members convicted appellant, contrary to his pleas, of 2 specifications of indecent acts with a child, in violation of Article 134, Uniform Code of Military Justice, 10 USC § 934. He was sentenced to a dishonorable discharge, confinement for 8 years, total forfeitures, and reduction to the lowest enlisted grade. The convening authority approved these results.

The Court of Criminal Appeals held that the military judge had erroneously admitted certain hearsay statements. After concluding that the errors affected the sentence but not the findings, the court reassessed the sentence. It reduced the period of confinement to 5 years but otherwise affirmed the sentence approved by the convening authority. 48 MJ 700, 724 (1998).

On appellant's petition, we granted review of the following issues:

I. WHETHER THE AIR FORCE COURT OF CRIMINAL APPEALS ERRED IN FINDING A CHILD COMPLAINANT COMPETENT TO TESTIFY TRUTHFULLY DESPITE OVERWHELMING EVIDENCE TO THE CONTRARY, AND AS SUCH, VIOLATED APPELLANT'S SIXTH AMENDMENT RIGHT TO CONFRONTATION WHEN THE CHILD'S PRETRIAL STATEMENTS WERE ADMITTED UNDER THE RESIDUAL HEARSAY RULE AFTER THE MILITARY JUDGE FOUND THE CHILD UNAVAILABLE TO TESTIFY.

II. WHETHER THE AIR FORCE COURT OF CRIMINAL APPEALS ERRED IN HOLDING THAT THE ERRONEOUS ADMISSION OF RESIDUAL HEARSAY AND UNCHARGED MISCONDUCT EVIDENCE HAD NO PREJUDICIAL IMPACT ON THE FINDINGS OF GUILT.

III. WHETHER THE AIR FORCE COURT OF CRIMINAL APPEALS ERRED IN HOLDING THAT CERTAIN PRETRIAL STATEMENTS OF AN UNAVAILABLE WITNESS WERE ADMISSIBLE UNDER THE RESIDUAL HEARSAY RULE.

For the reasons set forth below, we affirm the lower court's decision.

## I. ISSUE I: CONFRONTATION

### A. Background

The Sixth Amendment provides that an accused has the right "to be confronted with the witnesses against him." See United States v. Jacoby, 11 USCMA 428, 29 CMR 244 (1960). The Sixth Amendment does not preclude admission into evidence of an out-of-court statement by an unavailable witness if the statement either falls within a firmly rooted hearsay exception or has "particularized guarantees of trustworthiness." Ohio v. Roberts, 448 U.S. 56, 66, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). See Idaho v. Wright, 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990); Mil.R.Evid. 804(b)(5), Manual for Courts–Martial, United States (1998 ed.).

In evaluating whether an out-of-court statement of an unavailable witness is sufficiently trustworthy, a military judge may consider only those circumstances "that surround the making of the statement and that render the declarant particularly worthy of belief." United States v. Pollard, 38 MJ 41, 49 (CMA 1993), quoting Wright, supra at 819. See United States v. Ureta, 44 MJ 290 (1996), cert. denied, 519 U.S. 1059, 117 S.Ct. 692, 136 L.Ed.2d 615 (1997). Accord United States v. Johnson, 49 MJ 467, 470 (1998). Where the statement was made by a child and concerned sexual abuse, the Supreme Court has noted that it is appropriate to consider factors such as spontaneity, consistency, "lack of motive to fabricate," the child's mental state, and "use of terminology unexpected of a child of similar age." Wright, supra at 821–22, 110 S.Ct. 3139. The appropriate focus is on whether the child was "telling the truth when the statement was made." Id. at 822, 110 S.Ct. 3139.

Under Mil.R.Evid. 804, the proponent of a hearsay statement has the burden of demonstrating both the witness' unavailability (804(b)) and the "circumstantial guarantees of trustworthiness" (804(b)(5)). A timely objection is necessary to preserve the issue for

appellate review, absent prejudicial plain error. *See* Mil.R.Evid. 103(a)(1) and (d); *Ureta, supra* at 298. *See generally United States v. Powell,* 49 MJ 460 (1998).

At trial, appellant moved to suppress certain hearsay statements of 4–year–old MJI, one of the alleged victims. During the litigation of this motion, MJI's mother testified that MJI had not started school and had not gone to preschool. Trial counsel asked the mother whether MJI, if called to testify, would "understand that she had to tell the truth." She answered, "I don't think so, no." Trial counsel then asked the mother whether MJI would "understand what can happen if she lied," and again she answered, "No." MJI's mother also testified, without objection, that MJI's counselor believed that, "at her age and the way she handled everything else, it would do her damage to testify and that she wouldn't be able to handle it." According to MJI's mother, when she made MJI available to talk with defense counsel, MJI could not talk to them because "she was scared."

Subsequently, the following colloquy occurred between the military judge and MJI's mother:

Q: ... if I were to tell you that it was necessary for [MJI] to come in the courtroom and testify, would you make her available to testify?

A: No.

Q: Why is that?

A: Because she's still having bad dreams. She's too young to handle it.

After overnight deliberation, the military judge returned the next morning and denied the motion to suppress. As a predicate for her ruling, the military judge made several findings of fact. Relevant among them for purposes of this appeal are the following:

Mrs. [I] has made ... [MJI] available to the defense counsel for interview. [MJI] did not speak with the defense counsel.... [MJI] has never attended preschool or school. She is four years old and would not understand the significance of what would happen if she lied in court. [MJI's] counselor has told her mother that it would cause emotional harm to the child to re-

quire her to testify. Mrs. [I] would not make her available to testify if required to do so.

\* \* \*

I find that [MJI] is not available as that term is defined in Military Rule of Evidence 804(a)(6) and therefore this statement is available under residual hearsay under Military Rule of Evidence 804(b)(5).

Defense counsel did not contest MJI's unavailability, either during litigation of the motion or in response to the military judge's ruling.

### B. Discussion

■ Appellant asserts that the Court of Criminal Appeals "erred in finding [MJI] competent to testify truthfully despite overwhelming evidence to the contrary." *See generally* Mil.R.Evid. 601 (general rule of competence) and 603 (witness oath or affirmation required). Appellant contends that, in concluding that the child's hearsay statements in question contained "sufficient guarantees of trustworthiness" to qualify for admission under Mil.R.Evid. 804(b)(5), "the majority opinion failed to properly account for the single most egregious aspect of the admission of [MJI]'s out-of-court statements: namely that [MJI] did not understand the difference between telling truth or lying, *in general.*" Final Brief at 10 (emphasis in original).

We do not agree with appellant's view of the record or his characterization of the opinion of the Court of Criminal Appeals. Because MJI did not testify, her competence to testify as a witness was not placed at issue. In that context, neither the military judge nor the court below addressed, much less decided, MJI's competence as a witness.

The record does not support the assertion by appellant that MJI "did not understand the difference between telling truth or lying, *in general.*" The military judge did not conclude that MJI could not distinguish between truth and falsity or was unable to tell the truth. Trial counsel's questions and the military judge's findings of fact addressed the narrower issue of whether MJI would under-

stand and appreciate the legal consequences of not telling the truth in the courtroom if called as a witness. We agree with the court below that the military judge's ruling reflected nothing more than the observation "that, like most four-year-olds, MJI would not understand the significance of testifying truthfully in a judicial proceeding." We also agree with the court's observation that "because of her tender age, [MJI] lacked the ability to appreciate the moral duty to tell the truth in the courtroom." 48 MJ at 710.

In that context, the military judge's ruling does not support appellant's contention that the out-of-court statements were made by a person who did not know truth from lies. Although the military judge's findings of fact might have been more explicit, we agree with the court below that, under the circumstances of this case, "by ruling that MJI's statements were admissible hearsay, 'the trial court implicitly found that [MJI] [. . .] was capable of receiving just impressions of the facts and of relating them truly.'" 48 MJ at 710 (quoting *Wright*, 497 U.S. at 825, 110 S.Ct. 3139).

## II. ISSUES II AND III: RESIDUAL HEARSAY AND UNCHARGED MISCONDUCT

The detailed opinion of the Court of Criminal Appeals sets forth the factual context leading to the charges against appellant and carefully analyzes each of appellant's contentions regarding admission of hearsay and evidence of uncharged misconduct, which are the subjects of Issues II and III in this appeal. We agree with the treatment of these questions by the majority below, although we find it unnecessary to determine whether MJI's statements to Dr. Clinton, through her mother, were admissible under the hearsay exception for statements made for purposes of medical diagnosis or treatment. *See* Mil.R.Evid. 803(4). As to those statements, we agree with the court below that, even if they were inadmissible, any error was harmless. 48 MJ at 711. In addition, we conclude that the cumulative impact of any error was not prejudicial in the context of appellant's admissions and statements. *See id.* at 733 (Snyder, S.J., concurring in part and concurring in the result) (noting that appellant's claim of accidental touching "is incredible and collapses under its own weight").

## III. CONCLUSION

The decision of the United States Air Force Court of Criminal Appeals is affirmed.

SULLIVAN, Judge (concurring in the result):

Appellant was found guilty of committing an indecent act on M.J.I., a 4-year-old girl "by fondling her and placing his hands upon her private parts, with intent to gratify [his] sexual desires." He was also found guilty of committing an indecent act on A.L.I., her 6-year-old sister, "by fondling her and placing his hands upon her private parts," with same sexual intent. M.J.I. did not personally testify at appellant's court-martial because the military judge found her unavailable within the meaning of Mil.R.Evid. 804(a)(6). Numerous out-of-court statements made by M.J.I. to her mother, her grandmother, her doctor, and a police detective were admitted to show appellant's guilt. Also, evidence of uncharged acts of sexual molestation by appellant against other children was admitted in this case.

I

The military judge made the following findings in ruling on appellant's Sixth Amendment-confrontation objection to admission of M.J.I.'s out-of-court statements:

Thirteen, Mrs. [I] has made [A] and [M.J.] available to the defense counsel for interview. [M.J.] did not speak with the defense counsel. Fourteen, [M.J.] has never attended preschool or school. *She is four years old and would not understand the significance of what would happen if she lied in court.* [M.J.]'s counselor has told her mother that it would cause emotional harm to the child to require her to testify.

Mrs. [I.] would not make her available to testify if required to do so.

(Emphasis added.) She later concluded:

The statements made to Mrs. [I.] at her mother's house are admissible as residual hearsay. I find that [M.J.I.] is not available as that term is defined in Military Rule of Evidence 804(a)(6) and therefore this statement is available under residual hearsay under Military Rule of Evidence 804(b)(5). There are sufficient indicia of reliability and sufficient guarantees of trustworthiness as to each of the statements made by [M.J.I.] to Mrs. [I.] They are sufficient to satisfy the requirements of *Idaho versus Wright* and *Ohio v. Roberts.* The defense Motion *in Limine* is denied. Any other matters the defense wishes to raise? Any other motions?

In my view, the military judge's findings of fact and the mother's testimony supporting it raised some questions about M.J.I.'s competence as an out-of-court witness in this case. *See generally* Mil.R.Evid. 601–603; Morey, *The Competency Requirement for the Child Victim of Sexual Abuse: Must We Abandon It* 245, 251–52 (1985) (delineating requirements for competent child testimony under the Federal Rules of Evidence); Graham, *Indicia of Reliability and Face to Face Confrontation: Emerging Issues in Child Sexual Abuse Prosecution* 19, 76–77 (1984) (witness-competency qualifications under Federal Rules of Evidence). *See* 5 Wigmore, *Evidence* § 1424 (Chadbourn rev.1974); Myers, 2 *Evidence in Child Abuse and Neglect Cases* § 7.56 (3d ed.1997). However, appellant did not move to disqualify M.J.I. as a witness in this case on the basis of her lack of competence as a witness. *See United States v. White,* 45 MJ 345, 348 (1996). Moreover, I agree with the majority below that a mere failure of this child to understand the ramifications of her lying in court did not, *per se,* render her incompetent as a hearsay witness. *See United States v. Morgan,* 31 MJ 43, 47–48 (CMA 1990)("general inability to understand an oath or affirmation to tell the truth" does not render child witness incompetent where other evidence demonstrates that she knew the difference between truth and falsity and intended to tell the truth), *cert. denied,* 498 U.S. 1085, 111 S.Ct. 959, 112 L.Ed.2d 1047 (1991). *See also United States v. LeMere,* 22 MJ 61, 66 (CMA 1986); *see generally* Myers, *supra* § 3.22.

Of course, ignorance of the ramifications of testifying in court is a factor to be considered by the judge in determining whether appellant's constitutional right to confrontation was violated by admission of M.J.I.'s out-of-court declarations as residual hearsay. *See Idaho v. Wright,* 497 U.S. 805, 817, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990); *Myers, supra* § 7.39 at 285. In this regard, appellant argued at trial:

Our concern with regard to all of these statements is that the court address the issue of the circumstantial guarantees of trustworthiness. Once again, simply because they are made by a young child does not mean they automatically come in. Once again, we're faced with the issue of Airman Hughes' right to confrontation. This is a young lady, a little girl, who, when we attempted to question her, wouldn't talk to us, that her mother indicates would not be able to come in here and understand the significance of these proceedings and the importance of telling the truth. So in addition to the circumstantial guarantees of trustworthiness, we're also in a confrontation issue.

I have considered the analysis of the appellate court below on this constitutional question and would adopt it in toto. *See* 48 MJ at 710; *see generally Swan v. Peterson,* 6 F.3d 1373, 1378–82 (9th Cir.1993), *cert. denied,* 513 U.S. 985, 115 S.Ct. 479, 130 L.Ed.2d 393 (1994).

II

The second granted issue in my view has some merit with respect to admission of some of the uncharged-misconduct evidence of sexual molestation of other children by appellant. However, the erroneous admission of this evidence was clearly harmless. The prosecution, as part of its case-in-chief, also introduced evidence of appellant's pre-trial admissions, which virtually assured his conviction. The record states:

Q: Prior to interviewing the accused, did you read the accused his rights?

A: I read him his state version of the *Miranda* warning, the *Miranda* warning that I go under. In my presence also the military version of his rights was also given to him by Agent Schultz.

Q: Was the accused willing to answer questions from both you and Agent Schultz?

A: Yes, sir.

Q: I have a few questions about that interview that I'd like to ask you. What games did the accused ... well first, was the accused at the Super Bowl party at the [I.]'s residence on the 28th of January?

A: Yes, sir.

Q: What did the accused say about being in the children's, the girl's bedroom at the [I.] residence?

A: *He said he was there.*

Q: Did he say how long he was there?

A: *He said it was from approximately the first quarter on through the end of the game.* I don't know if we talked exact times. *The game was probably three and a half or four hours long.*

Q: But he did give you, at least in how long the game was, what period of the game he left from the living room and how long he was back in the bedroom?

A: Yes, sir.

Q: What games did the accused say he played with the girls?

A: There were several that he confirmed. We had already interviewed the children, to some extent, and they had given us some names of some games. *He confirmed a half dozen games or so, as I remember. Some of these were a wrestling game, playing with a ball, blowing on a mirror.* I'd have to check my notes for all the different games that he talked about, but there were several.

Q: Do you remember what the accused said he was wearing while he was in the room?

A: He said he was wearing jeans with no underwear and a long tee shirt that went down past the waistline of his pants.

Q: *What did the accused say regarding [M.J.I.] and blowing raspberries?*

A: *He confirmed what had previously been alleged by the child that he had blown what was called a raspberry on the child's buttocks area.*

Q: What about [M.J.]'s clothing when he blew the raspberries?

A: *He had pulled the clothing to the side to accomplish this.*

Q: And where did he say he blew the raspberries on [M.J.]?

A: I don't remember the exact verbiage off the top of my head. *It was just her buttocks area.*

MJ: Just a moment.

(The military judge conferred with the bailiff about the comings and goings in the spectator section.)

MJ: You may proceed.

Q: What did the accused say the girls were wearing that night?

A: Shorts and tee shirts and panties.

Q: *What did the accused say about touching [M.J.] and [A.I.]?*

A: *He stated that he had touched them.*

Q: What description did he give you for how he touched them?

A: *He stated to me that he touched the children on their bare vaginas and bare anuses under their clothing.*

Q: And that was both children?

A: Yes, sir.

Q: What number of times did the accused say this happened?

A: He did not elaborate as far as an exact number. I tried to get him to be specific; however, *the closest I could get him would be several.*

Q: *And he said it was on their bare vaginal area and bare anal area?*

A: *Yes, sir.*

Q: How did the accused say this contact happened several times?

A: *He stated it happened accidentally during one of the games, which was called the wrestling game, where they were wrestling with one another.*

Q: What discussion did you have with the accused about the condition of both girls' vaginal area?

A: In further wanting to confirm that these touches occurred, I wanted to see if the defendant could differentiate between whether or not the girls' vaginal areas were wet or dry.

Q: Did you ask him that?

A: Yes, sir.

Q: What was the accused's answer?

A: He said that they were dry.

Q: What discussions did you have with the accused about if the girls were lying about being touched?

A: *I asked him if the girls were lying about being touched and he replied several different times during the interview that they were not.*

Q: What did you ask the accused about sleeping near [A.I.]?

A: *He stated at some point during the interview that he slept approximately 30 minutes next to [A.I.]* There was also some reference to a game called the sleeping game.

Q: Did anything happen while he slept near [A.I.], according to the accused?

A: *He said he was not certain, that it could have, as he was asleep.*

Q: What about bodily fluids from the accused?

A: At some point during the interview, I asked Mr. Hughes if there was any possibility of any of his bodily fluids being at the crime scene, that being the children's residence and in particular, the bedroom. His response was that there was possibly some saliva that had been left at the crime scene . . . or excuse me . . . I often refer to it as the crime scene, but at the girls' bedroom.

Q: Did you ask him how saliva could have been left in the bedroom?

A: He stated that at some point during wrestling, playing with the children, he had bit his tongue and that he had reached up and licked his tongue to his hand to check to see if there was blood still on his tongue. He visually demonstrated by putting four fingers to his mouth.

Q: You say he held four fingers to his mouth to visually demonstrate that?

A: Yes, sir.

Q: During this part of the interview, what about semen or ejaculate?

A: He stated there would not be any of his bodily fluids other than the saliva there.

Q: What did the accused say regarding sexual thoughts and kids during the interview?

A: He stated that he did not have sexual thoughts about children the ages of [M.] and [A.]. . . .

(Emphasis added.)

In addition, I note that 6–year–old A.L.I. did testify to her own sexual molestation by appellant on the same day, at that same Super Bowl Party, in the same room during appellant's inexplicable and extended absence from the adults in the television room. In these circumstances, with respect to the erroneous admission of uncharged-misconduct testimony concerning other children, I agree with Senior Judge Snyder's astute no-prejudice analysis. *See* 48 MJ at 733–34 (concurring in part and concurring in the result).

### III

The final issue in this case is:

WHETHER THE AIR FORCE COURT OF CRIMINAL APPEALS ERRED IN HOLDING THAT CERTAIN PRETRIAL STATEMENTS OF AN UNAVAILABLE WITNESS WERE ADMISSIBLE UNDER THE RESIDUAL HEARSAY RULE.

I note that the judge admitted evidence of three out-of-court statements of M.J.I. under Mil.R.Evid. 804(b)(5). Such evidentiary decisions are reviewed for an abuse of discretion, and the appellate court below found no abuse of discretion in this case. 48 MJ at 709–10. Appellant argues that the factors cited by the appellate court below for admission under this evidentiary rule were not based on evidence in the record. I disagree.

I have examined the opinion of the lower court on whether these statements of M.J.I. qualified for admission as residual hearsay

under Mil.R.Evid. 804(b)(5). Appellant does not argue that the factors identified by that appellate court as showing "equivalent circumstantial guarantees of trustworthiness" as required by this evidentiary rule were improperly drawn from the Confrontation Clause case of *Idaho v. Wright,* 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990). Indeed, if he did, I would reject this argument. *See United States v. Ureta,* 44 MJ 290, 297 (1996), *cert. denied,* 519 U.S. 1059, 117 S.Ct. 692, 136 L.Ed.2d 615 (1997); *United States v. Pollard,* 38 MJ 41, 49 (CMA 1993); *cf. United States v. Lyons,* 36 MJ 183, 186–87 (CMA 1992). Otherwise, I conclude his argument is reduced to a simple disagreement with the lower appellate court's reading of the record and, therefore, it is without legal merit. *See* Art. 67(c), UCMJ, 10 USC § 867(c) (1994).