# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

———————————

**No. ACM 39662**

———————————

**UNITED STATES**
*Appellee*

**v.**

**Joshua A. DAVY**
Technical Sergeant (E-6), U.S. Air Force, *Appellant*

———————————

Appeal from the United States Air Force Trial Judiciary

Decided 9 September 2020

———————————

*Military Judge:* L. Martin Powell.

*Approved sentence:* Dishonorable discharge, confinement for 4 years, and reduction to E-1. Sentence adjudged 11 December 2018 by GCM convened at Little Rock Air Force Base, Arkansas.

*For Appellant:* Major Mark J. Schwartz, USAF.

*For Appellee:* Lieutenant Colonel G. Matt Osborn, USAF; Mary Ellen Payne, Esquire.

Before POSCH, RICHARDSON, and MEGINLEY, *Appellate Military Judges.*

Judge MEGINLEY delivered the opinion of the court, in which Senior Judge POSCH and Judge RICHARDSON joined.

———————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

———————————

MEGINLEY, Judge:

A general court-martial composed of a military judge sitting alone convicted Appellant, in accordance with his pleas and a pretrial agreement (PTA), of three specifications of sexual abuse of his stepdaughter, KW, a child under

the age of 16 years in violation of Article 120b, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920b.[1] The military judge sentenced Appellant to a dishonorable discharge, confinement for 102 months, and reduction to the grade of E-1.

Consistent with the terms of the PTA, after announcement of sentence, the convening authority withdrew, and dismissed with prejudice, three other specifications of sexual abuse of KW, and, at action, the convening authority approved four years of confinement. The convening authority also waived all mandatory forfeitures for a period of six months after action, for the benefit of Appellant's dependent children. Otherwise, the convening authority approved the sentence as adjudged.

On appeal, Appellant raises one issue pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982): whether Appellant was denied effective assistance of counsel because trial defense counsel failed to present evidence of Appellant's addiction to alcohol in mitigation. We find Appellant has not shown that his counsel were ineffective in their representation, and affirm the findings and sentence.

## I. BACKGROUND

Appellant first entered active duty in 2003. After completing his first enlistment in June 2008, he separated from the Air Force and then reenlisted in January 2011. At the time of the charged conduct, between on or about 1 July 2017 and on or about 19 December 2017, Appellant was stationed at Little Rock Air Force Base, Arkansas.

The victim in this case is Appellant's stepdaughter, KW. Appellant began dating KW's mother, Technical Sergeant (TSgt) SD, when KW was three years old, and married TSgt SD in January 2011 when KW was six years old. KW had no relationship with her biological father and referred to Appellant as "Dad." At the time of the charged conduct, Appellant and TSgt SD maintained a family home with KW and their youngest daughters, aged three and five. TSgt SD was deployed when Appellant engaged in the charged conduct.

In October 2017, shortly before KW's thirteeth birthday, Appellant attempted to cuddle with her on the couch in the family home. KW moved to the

---

[1] All references in this opinion to the Uniform Code of Military Justice are to the *Manual for Courts-Martial, United States* (2016 ed.).

floor and Appellant followed. KW then moved again to the couch, and Appellant followed again, sat next to KW, and prevented her from getting up. Appellant placed his hand up KW's shirt and bra and touched her breast with his hand.[2] Appellant then put his hand down KW's pants beneath her underwear and touched KW's vagina.[3] Appellant also took KW's hand and made her touch his erect penis.[4] KW screamed and ran to her bedroom. Later in the evening, Appellant made KW sleep in his bed. Appellant slept under the blanket, while KW slept on top. According to Appellant's statements during his providence inquiry with the military judge, he did not recall going to bed that night, but when he woke up the next morning, he was not wearing any pants, which he later found covered in beer next to the couch. Appellant described to the military judge his reaction, explaining he was "horrified because [he] was not sure [he] had a complete memory of everything that happened with KW." During the providency inquiry, Appellant noted he apologized to KW and characterized what he did "as being mean to her."

Described in the stipulation of fact admitted at trial without objection is the conduct that formed the basis of two specifications the convening authority withdrew and dismissed.[5] Specifically, on 19 December 2017, while making dinner, Appellant told KW he thought she was prettier than her mom, and put his hands on her waist in the manner he was accustomed to touching his spouse. After dinner, Appellant put KW's sisters to bed earlier than their usual bedtime. Appellant then told KW that she had to choose from two options: she could "either go in the bedroom and have sex with him or her family would disappear." Appellant took off his wedding band and put it on KW's finger. KW ran to her room, locked her door, and called 9-1-1. While she was on the phone, Appellant tried to get into her bedroom, but KW pushed her feet against her nightstand with her back against the bedroom door until the police arrived.

---

[2] This misconduct is reflected on the charge sheet as Specification 2 of the Charge.

[3] This misconduct is reflected on the charge sheet as Specification 1 of the Charge.

[4] This misconduct was reflected in Specification 3. Appellant further stipulated that after he made KW touch his penis, he removed his pants to show KW his erect penis. This misconduct was alleged in Specification 5, which was withdrawn and dismissed with prejudice pursuant to the PTA.

[5] Specification 4 alleged that Appellant committed lewd acts upon KW by touching KW's waist through her clothing. Specification 6 alleged that Appellant committed a lewd act upon KW by telling KW if she did not have sex with Appellant that her mother and sisters would disappear.

KW was scared because she did not know what Appellant would do. When the police arrived, Appellant admitted that he touched KW inappropriately, and was promptly arrested and transported to jail. Appellant's wife learned of the allegations as she prepared to redeploy and return home.

## II. DISCUSSION

### A. Additional Background

On appeal, Appellant alleges his trial defense counsel were ineffective. Appellant appears to make the following assertions in a declaration this court ordered attached to the record: (1) that, in the year before his trial, Appellant was diagnosed with severe alcoholism, major depression and general anxiety disorder; however, trial defense counsel rebuffed his request to request an expert (or specialist) on alcoholism; (2) that failing to mention his alcoholism and lack of treatment negatively affected Appellant's PTA and sentencing; and (3) his trial defense counsel did not do enough to counter a perception that Appellant was of sound mind at the time of his arrest for the December 2017 incident and not under the influence of any substance. In concluding his declaration, Appellant acknowledges that "being under the influence of alcohol, no matter how severe, does not free [him] of responsibility for [his] actions," but contends trial defense counsels's failure to "present . . . the severity of [his] alcoholism, the behaviors and actions indicative in alcoholics[,] or even the fact that [he] was under the influence [of alcohol during the offenses]" deprived the military judge of information needed to adjudge a fair and appropriate sentence. With respect to Appellant's third assertion, regarding the December 2017 incident, we have carefully considered Appellant's contention. Given that the specifications related to this incident were withdrawn and dismissed with prejudice pursuant to the PTA, we find this assertion does not require further discussion or warrant relief. *See United States v. Matias*, 25 M.J. 356, 361 (C.M.A. 1987).

In response to Appellant's claims involving alcoholism, we ordered and received declarations from Appellant's trial defense counsel, Captain (Capt) WA and Capt JC, which refute Appellant's claims and are generally consistent with one another. We have considered whether a post-trial evidentiary hearing is required to resolve any factual disputes. Reviewing counsel's declarations and the record as a whole, we are convinced such a hearing is unnecessary. *See United States v. Ginn*, 47 M.J. 236, 248 (C.A.A.F. 1997); *United States v. DuBay*, 37 C.M.R. 411, 413 (C.M.A. 1967) (per curiam).

Capt WA states while Appellant's "history with alcohol was discussed, it strategically was not overly emphasized," as Capt WA did not want to "jeopardize the providence of [Appellant's] guilty plea." Instead, the defense team

chose to focus on Appellant's "years of positive contributions in the Air Force and to his family, as well as his acceptance of responsibility for his actions," a strategy discussed with, and approved by, Appellant. The trial defense team "purposely avoided the appearance that [Appellant] was just some alcoholic trying to shift blame to the alcohol," and, in Capt WA's opinion, the "seasoned prosecutors we faced would have easily countered, arguing that [Appellant] was not truly accepting responsibility." Further, Capt WA states, "we did not want the military judge to determine that additional confinement was necessary to protect society because [Appellant] may have a never-ending addiction to alcohol, which causes [Appellant] to commit violent sex crimes against children." Finally, Capt WA indicates, "If [Appellant] believed there was additional mitigating evidence regarding his 'alcoholism' that he wanted presented, he did not relay or provide such evidence to Capt [JC] or me." Capt WA concludes, "That said, I still believe we pursued a strategy most likely to achieve the best result possible for [Appellant]."

Capt JC's declaration is similar to Capt WA's. Most notably, Capt JC points out that the PTA discussions were initiated at the request of Appellant and both he and Capt WA discussed with Appellant the provision they "would not request production of any witnesses for the findings or sentencing phase of trial." Capt JC states Appellant understood the terms of the PTA and Appellant "was given every opportunity to ask questions or modify the terms of his PTA" and at "no point prior to submitting the final proposed PTA did [Appellant] indicate that he would be unwilling to submit a PTA absent the approval of an expert in alcohol abuse disorders." Capt JC adds that he and Capt WA "spent a considerable amount of time discussing a sentencing theme and theory before and after a PTA was submitted for consideration in [Appellant's] case," and they "believed focusing on [Appellant's] alcohol abuse as mitigation evidence created multiple concerns for the presentation of [their] case."

Capt JC states he and Capt WA "had multiple discussions with [Appellant] prior to his sentencing about [their] concerns with focusing too heavily on his alcoholism during sentencing," and Appellant understood and agreed with their sentencing strategy. Capt JC concludes, "[Appellant's] mental health and alcoholism was thoroughly assessed by Capt [WA] and I prior to [Appellant's] sentencing hearing. Although this was a possible sentencing strategy, we believed it more appropriate to focus [Appellant's] sentencing case on other aspects of his life to ensure he could maximize his mitigation potential during sentencing without fearing that his sentencing case would come off as excuse making or shifting the blame for his actions to alcohol abuse."

5

**B. Law**

We review allegations of ineffective assistance de novo. *United States v. Gooch*, 69 M.J. 353, 362 (C.A.A.F. 2011) (citing *United States v. Mazza*, 67 M.J. 470, 474 (C.A.A.F. 2009)). In order for Appellant to prevail on a claim of ineffective assistance of counsel, he must demonstrate that counsel's performance was deficient and that the deficiency resulted in prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

We employ a presumption of competence, and apply a three-part test in assessing whether that presumption has been overcome: (1) "is there a reasonable explanation for counsel's actions?"; (2) "did defense counsel's level of advocacy 'fall measurably below the performance . . . [ordinarily expected] of fallible lawyers'?"; and (3) "[i]f defense counsel was ineffective, is there 'a reasonable probability that, absent the errors,' there would have been a different result?" *Gooch*, 69 M.J. at 362 (omission and alteration in original) (quoting *United States v. Polk*, 32 M.J. 150, 153 (C.M.A. 1991)).

"Defense counsel do not perform deficiently when they make a strategic decision to accept a risk or forego a potential benefit, where it is objectively reasonable to do so." *United States v. Datavs*, 71 M.J. 420, 424 (C.A.A.F. 2012) (citing *Gooch*, 69 M.J. at 362–63) (additional citation omitted). In reviewing the decisions and actions of trial defense counsel, this court does not second-guess strategic or tactical decisions. *See United States v. Morgan*, 37 M.J. 407, 410 (C.M.A. 1993) (citations omitted). It is only in those limited circumstances where a purported "strategic" or "deliberate" decision is unreasonable or based on inadequate investigation that it can provide the foundation for a finding of ineffective assistance. *See United States v. Davis*, 60 M.J. 469, 474 (C.A.A.F. 2005).

**C. Analysis**

Appellant claims his trial defense counsel were ineffective because they failed to address the severity of his alcoholism. We disagree, as the record shows the opposite is true. Regarding his first assertion, that Appellant's request for an expert (or specialist) on alcoholism was rebuffed, both trial defense counsel outlined a reasonable alternate strategy with Appellant. They expressed their concerns to Appellant about focusing too much on alcohol abuse as mitigation, and believed a better approach was to focus on other aspects of his life to ensure he could maximize his mitigation potential during sentencing. Defense counsel also did not want to convey that Appellant was shifting the blame for his actions to alcohol abuse. Finally, Capt WA indicated Appellant did not provide additional mitigating evidence regarding his alcohol abuse to him or Capt JC for presentation at the sentencing hearing.

Further, Appellant specifically agreed not to request the production of any witnesses as part of his PTA. As shown by Capt JC's declaration, Appellant knew the terms of the PTA, understood the provision about not requesting production of witnesses, and Appellant at "no point prior to submitting the final proposed PTA . . . indicate[d] that he would be unwilling to submit a PTA absent the approval of an expert in alcohol abuse disorders." Further, the military judge specifically asked Appellant about this provision, and Appellant stated he understood it and had no questions. Appellant later stated no one forced or coerced him into entering the PTA. In return for waiving an expert or "specialist" at government expense, Appellant received a favorable PTA, which significantly reduced the amount of time he might have been confined. Finally, even if Appellant had chosen to litigate his case instead of pleading guilty, Appellant has not shown he would have prevailed in moving the court to order production of an expert consultant. *See United States v. Freeman*, 65 M.J. 451, 458 (C.A.A.F. 2018). Appellant has failed to demonstrate that any error by his trial defense team prejudiced him on this issue.

With respect to Appellant's second assertion, that by failing to mention his alcoholism and lack of treatment at trial, Appellant's PTA and sentencing were negatively influenced, we note that Appellant's alcoholism and use of alcohol during the commission of his offenses were mentioned throughout his court-martial, including during his providence inquiry, in the stipulation of fact, and in sentencing, through documentary evidence and witness testimony. Appellant also discussed his alcoholism in his written and oral unsworn statements; the oral unsworn statement was presented in a question-and-answer format, where Appellant discussed his struggles with alcohol and his recent successes in treatment.

Trial defense counsel could have chosen a different sentencing strategy. However, the record shows their trial strategy in this case was reasonable. Their strategy brought relevant information to the attention of the military judge, and reduced both Appellant's confinement liability and the sentence that was approved by the convening authority. We evaluate trial defense counsel's performance not by the success of their strategy, "but rather whether counsel made . . . objectively reasonable choice[s] in strategy from the alternatives available at the [trial]." *United States v. Dewrell*, 55 M.J. 131, 136 (C.A.A.F. 2001) (quoting *United States v. Hughes*, 48 M.J. 700, 718 (A.F. Ct. Crim. App. 1998), *aff'd*, 52 M.J. 278 (C.A.A.F. 2000)). Under these circumstances, Appellant fails to overcome the strong presumption that counsel's performance was within the wide range of reasonable professional assistance.

## III. CONCLUSION

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and sentence are **AFFIRMED**.[6]

FOR THE COURT

AARON L. JONES
Deputy Clerk of the Court

---

[6] There were six specifications to one charge in Appellant's case, but the court-martial order (CMO) reflects "Charge I" and not "Charge" only. The charge sheet properly reflects the Charge. We order a corrected CMO.