*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps Court of Criminal Appeals

Before
TANG, LAWRENCE, and STEPHENS
Appellate Military Judges

---

**UNITED STATES**
Appellee

**v.**

**Quentez M. PHILLIPS**
Yeoman Third Class (E-4), U.S. Navy
Appellant

**No. 201900082**

Decided: 29 May 2020

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge:
Ann K. Minami

Sentence adjudged 20 November 2018 by a special court-martial convened at Naval Base Kitsap, Bremerton, Washington, consisting of officer members. Sentence approved by the convening authority: reduction to E-1, forfeiture of $1,092 per month for two months, confinement for two months, and a bad-conduct discharge.

For Appellant:
*Captain Valonne L. Ehrhardt, USMC*

For Appellee:
*Major Clayton L. Wiggins, USMC*
*Lieutenant Kimberly Rios, JAGC, USN*

Judge STEPHENS delivered the opinion of the Court, in which Senior Judge TANG and Judge LAWRENCE joined.

———————————

**This opinion does not serve as binding precedent, but
may be cited as persuasive authority under NMCCA
Rule of Appellate Procedure 30.2.**

———————————

STEPHENS, Judge:

Appellant was charged with a specification of indecent viewing and a specification of indecent recording under Article 120c, Uniform Code of Military Justice [UCMJ], 10 U.S.C. § 920c (2012). He was acquitted of the indecent viewing. He was also acquitted of the indecent recording, but found guilty, contrary to his plea, of the lesser included offense of attempted indecent recording, in violation of Article 80, UCMJ.

Appellant raises three assignments of error [AOEs]: (1) the evidence is legally and factually insufficient; (2) the military judge abused her discretion by allowing the trial counsel [TC] to refer to evidence during pre-sentencing of misconduct for which Appellant was acquitted; and (3) the bad-conduct discharge was an inappropriately severe sentence. We find that even if the military judge abused her discretion in allowing the trial counsel to make improper arguments during pre-sentencing and failing to give the members a sufficient curative instruction that this error was not materially prejudicial to Appellant's substantial rights. Concluding that the conviction is legally and factually sufficient and the sentence is not inappropriate, we affirm the findings and sentence as adjudged.

## I. BACKGROUND

Special Agent [SA] Whiskey[1] was the Naval Criminal Investigative Service [NCIS] special agent afloat for the USS NIMITZ (CVN-68). In July 2017, she received a call from the ship's Command Manager for Equal Opportunity. There was a complaint about a male Sailor—Appellant—allegedly "peeking"[2] at another Sailor in one of the men's heads. She began her investigation by interviewing two Sailors. Interior Communications Electrician Second Class

———————————

[1] Throughout this opinion, we use pseudonyms to refer to Special Agent Whiskey, IC2 Victor, EM2 Delta, and AN Sierra.

[2] Record at 244.

2

[IC2] Victor said he saw Appellant peeking at Electrician's Mate Second Class [EM2] Delta through chest-high dime-sized holes in a bulkhead partition while he showered. SA Whiskey also interviewed EM2 Delta.

When SA Whiskey interviewed Appellant, he admitted he was in that head at the alleged time. But he explained he had a hole in his shower caddy, which often caused his shaving and grooming equipment to fall onto the floor. Appellant told SA Whiskey he would look on the floor for his items when they fell, including in the shower. She took pictures of the scene and submitted her report to the command. At trial, SA Whiskey testified that "the investigation was closed after [Appellant] was counseled on proper bathroom etiquette."[3]

About four months later, in November 2017, a squadron Sailor, Airman [AN] Sierra, was showering in a different head aboard the ship. When he was rinsing off, he saw a cellphone camera just inside the shower curtain at about waist level, causing him to yell, "[W]hat the f[***]?"[4] As he opened the shower curtain, he saw the fully-clothed Appellant—whom he did not know—quickly enter another shower stall and turn the water on with the nozzle aimed away from him. AN Sierra finished his shower and waited for a few minutes. He then saw Appellant leave the shower stall and exit the head as he looked in his direction. Appellant was in complete shipboard uniform from coveralls to boots, was not wet, and did not have a towel, soap, or a shaving kit. AN Sierra told his chain of command and eventually went to see SA Whiskey.

SA Whiskey had AN Sierra try to identify Appellant using a photographic array. He got a good look at Appellant and was able to provide SA Whiskey a description. SA Whiskey obtained photographs from the ship's media department of Sailors matching Appellant's description. But Appellant's photo was not actually among the first photographs, and AN Sierra was unable to identify any of them as the suspect. However, AN Sierra had seen Appellant elsewhere in the ship and told SA Whiskey that he had seen him in a "green supply jersey."[5] This made SA Whiskey think of Appellant. She told her NCIS co-worker, "Hey, I think I know exactly who he's talking about. I just saw [Appellant], who I had another investigation with, in a green jersey and in the mess decks."[6] When AN Sierra looked at a new photographic

---

[3] *Id.* at 248.

[4] *Id.* at 291, 307-08.

[5] *Id.* at 257.

[6] *Id.*

array—this time with a picture of Appellant—he "immediately"[7] identified him.

At trial, Appellant was charged with two specifications of violating Article 120c, UCMJ.[8] The first specification alleged an indecent viewing of EM2 Delta back in July 2017—the incident which, apparently, had previously resulted in some kind of counseling. The second specification was for the November 2017 incident. During the findings portion of the trial, SA Whiskey testified about her investigation into the July 2017 incident, including her belief that it had resulted in counseling.[9] Appellant's civilian defense counsel [CDC] did not object to this testimony.

The Government presented the testimony of SA Whiskey, IC2 Victor, EM2 Delta and AN Sierra. The military judge admitted seven prosecution exhibits, which were diagrams of the heads and the photographic arrays. The Defense did not put on a case. The members acquitted Appellant of the July 2017 incident but found him guilty of the November 2017 incident.

During pre-sentencing, the Government offered no evidence. AN Sierra presented a brief unsworn statement pursuant to Rule for Courts-Martial [R.C.M.] 1001A. He told the members how he had lost his "sense of privacy" and had a "hard time doing things such as taking showers and even sleeping" that caused him to "lose focus" with his duties on the flight deck,[10] but he was able to "bounce back" quickly.[11] He also never told his family what happened because he did not want them to worry about him. He ended his unsworn statement by telling the members, "due to this violation of my privacy, it has made me not want to continue my career in this branch of service."[12]

Appellant presented character testimony from a third class petty officer and a first class petty officer. The military judge admitted Appellant's awards and evaluations and two character letters; one from a former teacher and coach, and one from a master chief who was Appellant's current (albeit

---

[7] *Id*. at 262.

[8] The Government initially charged three specifications, but withdrew the first one, which alleged that Appellant indecently viewed IC2 Victor who merely saw Appellant indecently viewing EM2 Delta in July 2017. *See* Charge Sheet.

[9] Record at 248.

[10] *Id*. at 397.

[11] *Id*. at 398.

[12] *Id*.

temporary) supervisor. The master chief asked the members to give Appellant a "second chance" and put his "Anchors and Two Stars on the table" in the hopes they would do so.[13] Finally, Appellant made an unsworn statement during which he accepted responsibility for upsetting the victim, but he did not admit his guilt of the offense. He apologized to AN Sierra and acknowledged that he knew his "career in the Navy [was] over" but asked not to receive a bad-conduct discharge.[14]

The TC recommended a sentence of five months' confinement, forfeiture of $800 per month for five months, reduction to E-1, and a bad-conduct discharge. The TC argued that this sentence would serve as a "reminder" to Appellant, which was "particularly important in this case because [he] already had that reminder once."[15] The TC continued:

> TC: He already had that warning once because back in July of 2017, he was counseled about appropriate bathroom etiquette. In response to that, he started using a different head—
>
> DC: Your Honor, I'm going to object; this is not before the members.
>
> TC: Your Honor, there was evidence presented that in July of 2017, after the first incident, Special Agent Whiskey testified that he received a counseling—
>
> MJ: The objection is overruled.
>
> TC: That reminder is even more appropriate because he already got that reminder once, and in November, he was using a different head, and he ignored it.[16]

The TC described his sentence recommendation as appropriate because it "sends a message to every other Sailor who might be good at his job but thinks about looking at one of his shipmates in a shower."[17] In concluding, the TC argued that a lenient sentence would send a message that as long as

---

[13] Def. Ex. A at 3.

[14] Record at 407.

[15] *Id.* at 415.

[16] *Id.* at 415-16.

[17] *Id.*

"you're good at your job, . . . it doesn't matter what you do. You can spy on your shipmates in the shower . . . ."[18]

After the TC's argument, the Defense requested a limiting instruction on account of the "improper argument."[19] In response, the military judge said, "All right, members, the—the evidence that you heard during the findings portion is evidence that is still before the court, so you are allowed to consider it. [Appellant] is only going to be sentenced for the offense for which you found him guilty."[20]

When the members started deliberations, the Defense asked to state for the record that SA Whiskey never saw a counseling document, that the Government never presented a counseling document, and that it was the Defense's belief that the command never counseled Appellant. The Defense also argued that the TC made an improper argument that Appellant repeated his conduct in spite of the counseling, improperly undercutting any Defense argument for rehabilitative potential. This was aggravated, the Defense argued, because the underlying conduct for the alleged counseling was conduct for which he was just acquitted. Finally, the Defense argued that this kind of error was "so prejudicial that it might merit a sentencing rehearing[.]"[21]

## II. DISCUSSION

### A. The Evidence is Legally and Factually Sufficient

We review Appellant's convictions for legal and factual sufficiency de novo.[22] The test for factual sufficiency is whether, "after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [this Court is] convinced of [A]ppellant's guilt beyond a reasonable doubt."[23] In conducting this unique appellate function, we take "a fresh, impartial look at the evidence," applying "neither a pre-

---

[18] *Id.*

[19] *Id.* at 417.

[20] *Id.*

[21] *Id.* at 444.

[22] Art. 66, UCMJ; *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002).

[23] *United States v. Rosario*, 76 M.J. 114, 117 (C.A.A.F. 2017) (emphasis, citation, and internal quotation marks omitted).

sumption of innocence nor a presumption of guilt" to "make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt."[24] When conducting this review, we are "limited to the evidence presented at trial."[25] Proof beyond a reasonable doubt does not mean, however, that the evidence must be free from conflict.[26]

When testing for legal sufficiency, we look at "whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt."[27]

To convict Appellant under Article 80, UCMJ,[28] the Government must prove beyond a reasonable doubt that: (1) Appellant made a certain overt act; (2) this amounted to more than mere preparation; (3) it apparently tended to effect the commission of a crime; and (4) the act was done with specific intent to commit another offense under the UCMJ. Here, the underlying offense was indecent recording under Article 120c, UCMJ.

The case against Appellant was strong. When AN Sierra testified, he described how he saw Appellant in the head, how Appellant held his cellphone camera inside the shower curtain, and how he saw him run into a nearby shower—fully clothed—and pretend to shower. He testified that he saw Appellant leave the shower and the head, while still dry in a full coveralls uniform. The Government also presented both photographic arrays that SA Whiskey presented to the victim in order to identify Appellant—the first array that did not have Appellant's photograph (from which the victim did not select any photograph), and the second array from which he immediately identified and selected Appellant.

SA Whiskey also testified that when she interviewed Appellant for the November 2017 incident, his explanation was that he went into the head after working out just to wash his "genital area because he had some medical

---

[24] *Washington*, 57 M.J. at 399.

[25] *United States v. Pease*, 75 M.J. 180, 184 (C.A.A.F. 2016) (quoting *United States v. Beatty*, 64 M.J. 456, 458 (C.A.A.F. 2007)).

[26] *United States v. Goode*, 54 M.J. 836, 841 (N-M. Ct. Crim. App. 2001).

[27] *United States v. Turner*, 25 M.J. 324 (C.M.A. 1987) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *see also United States v. Robinson*, 77 M.J. 294, 297-98 (C.A.A.F. 2018).

[28] 10 U.S.C. § 880 (2016).

things going on."[29] He was also upset that the Sailor accused him and did not attempt to have a "verbal dialog"[30] [sic] with him, but instead just reported the incident to NCIS. Finally, he opined that he was "being accused of all these accusations" because he put an end to the "moneymaking" by which he claimed the ship's Air Department would order supplies and sell them to the air wing.[31]

Appellant's statements to SA Whiskey were almost tantamount to a confession. Coupled with AN Sierra's positive identification of Appellant in the photographic array and the lack of any apparent bias or motive to fabricate, we find the conviction factually sufficient. Also, in reviewing the evidence "in the light most favorable to the prosecution"[32] we find that a reasonable factfinder could have found all the essential elements beyond a reasonable doubt. The conviction is both factually and legally sufficient.

## B. Trial Counsel's Argument in Pre-Sentencing Was Not Prejudicial

"When preserved by objection, this Court reviews allegations of improper argument de novo to determine whether the military judge's ruling constitutes an abuse of discretion."[33] Prosecutorial misconduct occurs when trial counsel "oversteps the bounds of that propriety and fairness which should characterize the conduct of such an officer in the prosecution of a criminal offense."[34] "Improper argument is one facet of prosecutorial misconduct."[35]

The military judge was presented with an unusual situation. The evidence of the counseling was admitted during findings without objection and without limitation. Under Mil. R. Evid. 105, this means this evidence was "fair game" and could be used without limitation. Although during findings the TDC could have objected for any number of reasons (hearsay, lack of personal knowledge, relevance), he did not. The TDC could also have cross-

---

[29] Record at 263.

[30] *Id.*

[31] *Id.* at 264.

[32] *Rosario*, 76 M.J. at 117 (quoting *United States v. Gutierrez*, 73 M.J. 172, 175 (C.A.A.F. 2014)).

[33] *United States v. Sewell*, 76 M.J. 14, 18 (C.A.A.F. 2017) (citing *United States v. Hornback*, 73 M.J. 155, 159 (C.A.A.F. 2014)).

[34] *United States v. Fletcher*, 62 M.J. 175, 178 (C.A.A.F. 2005) (quoting *Berger v. United States*, 295 U.S. 78, 84 (1935)).

[35] *Sewell*, 76 M.J. at 18 (citing *United States v. Young*, 470 U.S. 1, 7-11 (1985)).

examined SA Whiskey in detail on the foundation of her knowledge and developed what she meant by "bathroom etiquette." But the TDC did none of this and only objected to the argument and claimed he believed the testimony was untrue, during and after sentencing argument when the evidence had long been admitted without limitation.

On appeal, the Defense argues the TC's argument cut too close to a serial offender argument. The problem is that we simply do not know what the counseling entailed, or if it happened at all. If Appellant was counseled not to commit Article 120c offenses and specifically told not to attempt to view or photograph other Sailors as they showered, then the TC's argument was certainly a serial offender argument. On the other hand, if Appellant was counseled not to take his cell phone into bathrooms because other Sailors may misinterpret his actions, then the TC's argument can be viewed in a different light. The record is unclear as to what the counseling entailed because the TDC did not object or elicit further information. Given the two possible interpretations of this argument, and its lack of persuasive force, we will consider whether this argument—if error—prejudiced Appellant.

The military judge provided two instructions, both of which were legally correct: that the members can consider evidence presented during findings and that the members could only sentence Appellant for the offense of which he was found guilty. While this instruction did not address the TDC's concern over the TC's bootstrapping argument, we find any error did not prejudice appellant.

Our superior court has "set out three factors to guide our determination of the prejudicial effect of improper argument: (1) the severity of the misconduct, (2) the measures adopted to cure the misconduct, and (3) the weight of the evidence supporting the conviction."[36] "In the context of an allegedly improper sentencing argument, we consider whether trial counsel's comments, taken as a whole, were so damaging that we cannot be confident that [Appellant] was sentenced on the basis of the evidence alone."[37] Here, the prejudice was minimal at best. If the members had believed beyond a reasonable doubt that Appellant actually committed the alleged indecent viewing (or attempted indecent viewing) that was the subject of the counseling, then they would have convicted him on that specification. But they did

---

[36] *Sewell*, 76 M.J. at 18 (quoting *Fletcher*, 62 M.J. at 184) (internal quotation marks omitted).

[37] *United States v. Halpin*, 71 M.J. 477, 480 (C.A.A.F. 2013 (internal quotation marks and citation omitted).

not. The TC's bootstrapping argument did not result in an unreasonably severe sentence. And the military judge did instruct the members to only sentence Appellant for the offense for which he was convicted. As we discuss below, we believe a bad-conduct discharge was an appropriate sentence under the circumstances. Finally, as discussed above, the weight of the evidence during findings against Appellant was strong—and that strength carried over into sentencing. We find no prejudice.

## C. The Bad-Conduct Discharge is an Appropriate Sentence

We review sentence appropriateness de novo.[38] "Sentence appropriateness involves the judicial function of assuring that justice is done and that the accused gets the punishment he deserves."[39] This requires our "individualized consideration of the particular accused on the basis of the nature and seriousness of the offense and the character of the offender."[40] Despite our significant discretion in determining sentence appropriateness, we are mindful that this discretion does not extend to engaging in acts of clemency.[41]

A bad-conduct discharge is "designed as punishment for bad-conduct rather than as a punishment for serious offenses of either a civilian or military nature."[42] Appellant attempted to record another Sailor while he was showering aboard ship, causing him to state that he no longer wanted to stay in the Navy. Appellant's conduct certainly qualifies as "bad-conduct."

Having given individualized consideration to the nature and seriousness of the crime, Appellant's record of service, and the entire record of trial, we conclude the sentence, to include the bad-conduct discharge, is not inappropriately severe.

## III. CONCLUSION

After careful consideration of the record and briefs of appellate counsel, we have determined the approved findings are correct in law and fact and find no error materially prejudicial to Appellant's substantial rights occurred.

---

[38] *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006).

[39] *United States v. Healy*, 26 M.J. 394, 395 (C.M.A. 1988).

[40] *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A. 1982) (citation and internal quotation marks omitted).

[41] *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010).

[42] R.C.M. 1003(b)(8)(C).

Arts. 59, 66, UCMJ. Accordingly, the findings and sentence as approved by the convening authority are **AFFIRMED.**

Senior Judge TANG and Judge LAWRENCE concur.

FOR THE COURT:

RODGER A. DREW, JR.
Clerk of Court