UNITED STATES, Appellee

v.

Jesus GUTIERREZ Jr., Private First Class
U.S. Army, Appellant

No. 14-0009

Crim. App. No. 20120104

United States Court of Appeals for the Armed Forces

Argued January 14, 2014

Decided March 20, 2014

ERDMANN, J., delivered the opinion of the court, in which BAKER, C.J., and STUCKY, RYAN, and OHLSON, JJ., joined.

<u>Counsel</u>

For Appellant: Captain Brian D. Andes (argued); Colonel Kevin M. Boyle, Lieutenant Colonel Peter Kageleiry Jr., and Major Vincent T. Shuler (on brief).

For Appellee: Captain T. Campbell Warner (argued); Colonel John P. Carrell, Lieutenant Colonel James L. Varley, and Major Catherine L. Brantley (on brief).

Military Judge: Christopher Fredrikson

**This opinion is subject to revision before final publication.**

United States v. Gutierrez, No. 14-0009/AR

Judge ERDMANN delivered the opinion of the court.

An enlisted panel sitting as a general court-martial found Private First Class Jesus Gutierrez Jr. guilty of stalking in violation of Article 120a, and not guilty of rape in violation of Article 120, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 920, 920a (2012). The convening authority approved the adjudged sentence of reduction to the grade of E-1, forfeiture of all pay and allowances, confinement for twelve months and a bad-conduct discharge. The United States Army Court of Criminal Appeals (CCA) affirmed the findings and sentence. United States v. Gutierrez, No. ARMY 20120104 (A. Ct. Crim. App. July 8, 2013). At trial, the government relied on the evidence supporting the rape charge to also support the "course of conduct" element required for a conviction under the stalking offense. We granted review to determine whether the evidence of stalking was legally sufficient where the panel acquitted Gutierrez of the rape offense.[1] We hold that the evidence was legally sufficient and therefore affirm the decision of the CCA.

---

[1] We granted the following issue:

> Whether the evidence of stalking was legally sufficient where Appellant was acquitted of rape and the prosecution relied on the evidence of rape to prove stalking.

United States v. Gutierrez, 73 M.J. __ (C.A.A.F. 2013) (order granting review).

## Background

While stationed in Germany, Gutierrez and his wife met AM, a German national. AM became good friends with Mrs. Gutierrez but did not have much to do with Gutierrez and testified she had only encountered him a few times. When AM informed Mrs. Gutierrez that she had difficulty getting packages she had ordered on the Internet delivered to her German address, Mrs. Gutierrez offered to let her use the Gutierrez's Army Post Office (APO) address.

After having an initial package delivered to the Gutierrez's APO address, AM forgot to change the Internet delivery address back to her home address and as a result, a number of additional packages were sent to the Gutierrez's home. Around that time the friendship between AM and Mrs. Gutierrez deteriorated and although AM was able to receive most of her packages, she had difficulty in getting the final three. It reached a point where AM threatened to contact the military police if she did not receive the packages. Finally, Gutierrez called AM and informed her that he would deliver the packages to her.

Mrs. Gutierrez testified that Gutierrez had an Alcoholics Anonymous meeting on the evening of August 10, 2010, and after the meeting he left their home to deliver the packages to AM. Mrs. Gutierrez further testified that while it took between

fifteen and twenty minutes to walk from their home to AM's home, Gutierrez was gone between sixty and ninety minutes.

AM testified as to what happened when Gutierrez arrived at her home that evening:  he pushed his way into her apartment, dropped her packages on the floor and told her that he "needed a hug"; Gutierrez started kissing her neck despite her protests; Gutierrez then began pulling on her shorts, repeatedly saying "I want it" and "just one time"; Gutierrez then pushed her onto the bed, pulled her shorts down and penetrated her vagina with his penis in spite of her attempts to push him away; after the intercourse, Gutierrez told AM "I'll call you," and left her apartment.

Gutierrez called AM the next day but AM did not answer her phone.  Gutierrez then began a pattern of calling AM and sending her text and Facebook messages.  AM blocked Gutierrez on her Facebook page, but he was able to contact her by using another person's account.  AM avoided Gutierrez's phone calls and when she did respond to his text messages, her responses were essentially:  "leave me alone."

A few weeks later, sometime in August or September, Gutierrez arrived uninvited at AM's apartment building around 2:00 a.m.  AM testified that upon his arrival the phone calls and text messaging increased and Gutierrez started ringing her doorbell.  AM testified that Gutierrez kept his finger on the

doorbell for about an hour, ringing it constantly.  During this time he awakened AM's nine-year-old daughter.  AM told him to leave, threatening to call the police or his wife.  Gutierrez eventually left.

In the early morning hours of October 2, 2010, Gutierrez again called and messaged AM multiple times.[2]  AM testified that because of the calls and texts she was afraid he would come over to her house again.  AM told him to stop calling.  Gutierrez later arrived at AM's apartment building and again began ringing her doorbell from outside the building.  Gutierrez gained unauthorized entrance to the building and began kicking AM's apartment door.  AM and her nine-year-old daughter were "freaking out" and AM called a friend, Staff Sergeant (SSgt) DR.  SSgt DR testified that when AM called him she was in tears, and was emotional and stressed as if "she was in fear."  SSgt DR testified that AM told him someone was trying to break into her house.  He further testified that in the background he could hear the doorbell ringing, her cell phone ringing and "banging on the door."  SSgt DR testified that AM told him "she was afraid for her daughter and herself" and that "if this person came in she was afraid of what her daughter might see happen, or

---

[2] None of the messages sent by Gutierrez during this period of time contained overt threats, but were repeated requests for AM to talk with him.

something happen to her daughter." SSgt DR called the military police and stayed on the phone until they arrived.

When the military police arrived they saw Gutierrez "pulling on the door, buzzing the doorbell" and "yelling something into the buzz system." After Gutierrez was detained by the military police and brought to AM's door for identification he lunged toward AM saying, "let me in" and then began blowing kisses, licking his lips and making sexual gestures with his tongue. When the police responded to AM's apartment that night, AM also reported the August 10 sexual assault. AM was taken to the military police station to make a statement and during her interview Gutierrez continued to call her cell phone. The special agent who had interviewed AM testified that AM's phone rang enough times to distract him. Following the investigation, Gutierrez was charged with rape under Article 120, UCMJ, and stalking under Article 120a, UCMJ.

## Arguments of the Parties

Gutierrez argues that since the government relied upon the evidence underlying the rape allegation as evidence of a "course of conduct" required to establish the offense of stalking, the panel's acquittal on that charge removed that incident as a possible basis for establishing a "course of conduct." Although Gutierrez concedes that his conduct on October 2, 2010, may have constituted stalking conduct, he argues that this single October

6

2 incident was the only possible incident of stalking conduct. Since a "course of conduct" under Article 120a, UCMJ, requires two or more occasions of stalking conduct, he argues that the evidence was legally insufficient to establish a "course of conduct." Gutierrez further asserts that without the context of his initial August 10 visit to AM's home culminating in rape, a panel could not have found that the subsequent nonthreatening phone calls, text messages and visits would have induced fear of bodily harm in a reasonable person. Gutierrez goes on to argue that without the August 10 visit, the evidence failed to establish that he had knowledge or should have had knowledge that AM would be placed in reasonable fear of bodily harm. Other than the October 2 incident, Gutierrez argues that he was never violent or threatening toward AM, and since she had not involved the police prior to that time, it was impossible for him to know that he was causing her to fear bodily harm.

Although Gutierrez did not challenge his conviction on the grounds of an "inconsistent verdict," the government initially argues that "[a]n inconsistent verdict, standing alone, is not a basis for relief," citing Dunn v. United States, 284 U.S. 390, 391-92 (1932); United States v. Powell, 469 U.S. 57, 64 (1984); and United States v. Jackson, 7 C.M.A. 67, 71, 21 C.M.R. 193, 197 (1956). The government goes on to argue that based on all the evidence adduced at trial, a reasonable factfinder drawing

all reasonable inferences in the government's favor could have found each element of stalking beyond a reasonable doubt.

While the government relies on all of the evidence adduced at trial, including the phone calls and text messages, it places particular emphasis on three incidents where Gutierrez's conduct could be construed as causing fear of bodily harm:  (1) the August 10, 2010, conduct underlying the rape charge; (2) the incident in August or September 2010, where Gutierrez arrived at AM's apartment in the early morning hours; and (3) Gutierrez's October 2, 2010, visit to AM's apartment.  The government argues that this evidence, taken as a whole, demonstrates that a reasonable factfinder could have found beyond a reasonable doubt that Gutierrez's conduct was repeated and impliedly threatening, caused AM reasonable fear, and that Gutierrez did know or should have known that his conduct would place AM in reasonable fear.

## Discussion

"This Court reviews questions of legal sufficiency de novo. The test for legal sufficiency is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Bennitt, 72 M.J. 266, 268 (C.A.A.F. 2013) (citations and internal quotations omitted).  In performing our legal review we are not limited to appellant's narrow view of the record.

8

United States v. Gutierrez, No. 14-0009/AR

United States v. Cauley, 45 M.J. 353, 356 (C.A.A.F. 1996)

(citing United States v. McGinty, 38 M.J. 131, 132 (C.M.A.

1993)).  Further, "the appellate question is not whether the

evidence is better read one way or the other, but whether under

Jackson [v. Virginia, 443 U.S. 307, 319 (1979)], a reasonable

factfinder reading the evidence one way could have found all the

elements of the offense beyond a reasonable doubt."  United

States v. Oliver, 70 M.J. 64, 68 (C.A.A.F. 2011).

The elements of the offense of stalking under Article 120a,

UCMJ, are:

> (1) That the accused wrongfully engaged in a course
> of conduct directed at a specific person that would
> cause a reasonable person to fear death or bodily harm
> [including sexual assault][3] to himself or herself or a
> member of his or her immediate family;
>
> (2) That the accused had knowledge, or should have
> had knowledge, that the specific person would be
> placed in reasonable fear of death or bodily harm to
> himself or herself or a member of his or her immediate
> family; and
>
> (3) That the accused's acts induced reasonable fear
> in the specific person of death or bodily harm to
> himself or herself or to a member of his or her
> immediate family.

MCM pt. IV, § 45a.b. (2012) (MCM).

Article 120a, UCMJ, defines a "course of conduct" as "a

repeated maintenance of visual or physical proximity to a

---

[3] The statutory language of Article 120a, UCMJ, includes the phrase "including sexual assault" but that phrase in not found in the elements of stalking as set forth in the Manual for Courts-Martial, United States.  As the phrase is included in the statute, we will consider it as part of the statutory elements.

United States v. Gutierrez, No. 14-0009/AR

specific person"; or "a repeated conveyance of verbal threat[s], written threats, or threats implied by conduct or a combination of such threats, directed at or towards a specific person." Article 120a(b)(1)(A)-(B), UCMJ, 10 U.S.C. § 920a(b)(1)(A)-(B). The term "repeated" is defined as "two or more occasions of such conduct." Id. at 10 U.S.C. § 920a(b)(2).

The August 10, 2010, Incident:

Although Gutierrez was acquitted of the rape specification, the government is correct in noting that the panel could independently consider the evidence supporting that incident while deliberating on the stalking charge. See Powell, 469 U.S. at 59-60;[4] Jackson, 7 C.M.A. at 71, 21 C.M.R. at 197. Without question the evidence before the panel as to the incident on August 10, 2010, could have been found by the members to establish that Gutierrez engaged in conduct directed at AM that would cause a reasonable person to fear death or bodily harm,

_____

[4] "[A] criminal defendant already is afforded protection against jury irrationality or error by the independent review of the sufficiency of the evidence undertaken by the trial and appellate courts. This review should not be confused with the problems caused by inconsistent verdicts. Sufficiency-of-the evidence review involves assessment by the courts of whether the evidence adduced at trial could support any rational determination of guilty beyond a reasonable doubt. This review should be independent of the jury's determination that evidence on another count was insufficient. The Government must convince the jury with its proof, and must also satisfy the courts that given this proof the jury could rationally have reached a verdict of guilty beyond a reasonable doubt. We do not believe that further safeguards against jury irrationality are necessary." Powell, 469 U.S. at 67 (citations omitted).

10

including sexual assault.  The evidence was also sufficient to establish that Gutierrez either knew or should have known that such conduct would place AM in reasonable fear of bodily harm or sexual assault and the panel could also have concluded that Gutierrez's conduct induced reasonable fear in AM.

The August/September Incident:

In August or September 2010, Gutierrez arrived uninvited at AM's apartment building around 2:00 a.m. and started to ring her doorbell while calling her phone and sending her text messages. AM refused to let him in.  The commotion awakened her nine-year-old daughter and AM pleaded to be left alone, ultimately threatening to call the police or his wife if he did not leave. Despite AM's demands, Gutierrez continuously rang the doorbell for an hour.  In light of the initial August 10 incident, the panel could have concluded from this evidence that Gutierrez's conduct would cause a reasonable person to fear bodily harm. AM's threats that she would call the police while the incident was occurring provided sufficient evidence for the panel to conclude that AM feared bodily harm and also that Gutierrez either knew or should have known that his conduct would place AM in reasonable fear.

United States v. Gutierrez, No. 14-0009/AR

The October 2, 2010, Incident:

Around 2:00 a.m. on October 2, 2010, Gutierrez began calling and text messaging AM. He then arrived uninvited at her apartment building, rang her doorbell and continued to call and text message her. After gaining unauthorized access to AM's apartment building, Gutierrez began kicking AM's door. When the military police arrived and detained Gutierrez he continued his assertive behavior by lunging toward AM, demanding that she let him in, blowing kisses, licking his lips and making sexual gestures toward her. AM testified that Gutierrez's behavior caused her to fear for her daughter and for herself. Gutierrez concedes that this incident constituted an occasion of stalking conduct under Article 120a.

The Phone Calls and Messages:

Aside from the three discrete stalking incidents discussed above, the record reflects that from August to October 2010, Gutierrez repeatedly attempted to contact AM by telephone, text messages and Facebook. AM made numerous demands that Gutierrez cease contacting her and even blocked Gutierrez from her Facebook page. Gutierrez, however, remained undeterred and attempted to contact AM during the months of August and September. Although the contents of these messages were not overtly threatening when viewed in isolation, they were evidence of repeated unwelcome conduct. When viewed in the context of

12

United States v. Gutierrez, No. 14-0009/AR

Gutierrez's earlier conduct, they constitute "a repeated conveyance of . . . threats implied by conduct" as envisioned by Article 120a(a)(b)(1)(B), which created a link among the three discrete incidents of stalking conduct.  The panel could have independently considered these phone calls and messages when determining whether a course of stalking conduct existed.

## Conclusion

The offense of stalking contemplates consideration of evidence which covers the entire course of alleged unlawful conduct directed toward the victim.  This record contains evidence of repeated occasions of discrete stalking conduct, as well as a pattern of repeated telephone calls and text messages from which the jury could infer both objective and subjective awareness of fear of bodily harm or sexual assault.  Viewing the evidence in the light most favorable to the government, a rational trier of fact could have found beyond a reasonable doubt that Gutierrez's conduct constituted stalking as defined by Article 120a, UCMJ.

## Decision

The decision of the United States Army Court of Criminal Appeals is affirmed.