*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps Court of Criminal Appeals

Before
DALY, GROSS, and de GROOT
Appellate Military Judges

———————————

**UNITED STATES**
*Appellee*

**v.**

**Annastazjha P. SPENCE**
Lance Corporal (E-3), U.S. Marine Corps
*Appellant*

**No. 202300214**

———————————

Decided: 6 December 2024

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge:
Derek A. Poteet (arraignment)
Douglas C. Hatch (motions and trial)

Sentence adjudged 23 May 2023 by a special court-martial tried at Marine Corps Base Camp Pendleton, California, consisting of a military judge sitting alone. Sentence in the Entry of Judgment: hard labor without confinement for a period of 21 days.

For Appellant:
*Lieutenant Jesse B. Neumann, JAGC, USN*

For Appellee:
*Lieutenant Michael A. Tuosto, JAGC, USN*
*Major Tyler W. Blair, USMC*

_____

**This opinion does not serve as binding precedent, but
may be cited as persuasive authority under
NMCCA Rule of Appellate Procedure 30.2.**

_____

PER CURIAM:[1]

A special court-martial, composed of a military judge alone, convicted Appellant, contrary to her pleas, of one specification of willful dereliction of duty in violation of Article 92, Uniform Code of Military Justice (UCMJ).[2] This case is before us on direct appeal pursuant to Article 66(b)(1), UCMJ. Appellant challenges her conviction, raising two assignments of error: (1) legal sufficiency and (2) factual sufficiency. We find no prejudicial error and affirm.

## I. BACKGROUND

Appellant worked in the Camp Pendleton Deployments Quality Assurance Section of the Installation Processing Assistance Center (IPAC). Appellant's section managed entitlements for deployed personnel stationed on Camp Pendleton.[3] This comprised of processing documents to ensure that deployed personnel's entitlements were accurate.

These documents are generally processed online, but Marines can also drop off the documents at a walk-in desk. Two Marines approached the walk-in desk where Appellant was located and dropped off documents to be processed. The Marines were instructed to sign a logbook, though it is unclear whether they did so. Neither Marine was identified or located, nor was the exact nature of the documents determined because Appellant discarded them.

The IPAC could not have completed the processing of these documents, because the Marines did not belong to the Camp Pendleton Reporting Unit Code (RUC). In similar situations, the IPAC creates a miscellaneous action notice (MAN). According to the testimony of Chief Warrant Officer 2 (CWO2) Nova-Romeo, Gunnery Sergeant (GySgt) Ralph, and Corporal (Cpl) Rover,

---

[1] The Court is grateful for the assistance of Jacob Hoechster, the Court's judicial extern, for his assistance in drafting this opinion.

[2] 10 U.S.C. § 892.

[3] R. at 121.

MANs are not required; [4] however, it is the IPAC's standard operating procedure (SOP) to create them to notify the Marine's parent command of administrative actions that need to be completed. CWO2 Nova-Romeo, the Personnel Officer for Marine Corps Installation-West, Camp Pendleton, testified that when a Marine seeks assistance from the IPAC, but are not assigned to the RUC that that the IPAC services, "at that point we go in and create a MAN" to "make sure the Marine's taken care of at the end of the day." [5] He testified that the section processes every document that comes into the office. CWO2 Nova-Romeo further testified that processing all documents, including MANs, is in the IPAC's SOP, and all Marines in his section are trained to do it. [6] Cpl Rho testified that she trained Appellant to process documents the Deployment Quality Assurance Section handles, to include creating MANs. [7]

Creating a MAN requires certain access to computer databases that Appellant did not have. In accordance with the SOP as expressed in CWO2 Nova-Romeo's testimony, a Marine without the necessary access is required to take the documents to a Marine with access to create a MAN. Either Marine can scan the documents into the computer, which is the next step of the process. CWO2 Nova-Romeo testified that throwing out a Marine's paperwork prior to processing is not in the IPAC SOP.

On the date of the charged offense, Appellant delivered the documents from the two unknown Marines to Lance Corporal (LCpl) Hotel, who had the necessary access to create the MAN, in accordance with the SOP. Appellant told LCpl Hotel that a MAN needed to be created. [8] LCpl Hotel testified that she asked Appellant to scan and email the documents to her because her Common Access Card (CAC) was not working. LCpl Hotel subsequently stated she usually requests a Marine scan and email her the documents in order to process a MAN. LCpl Hotel said she placed the documents on a black file box on Appellant's desk, and Appellant stated the documents did not need to be processed, because "they're [the walk-in Marines] not in a RUC, so we can just throw them away." [9] LCpl Hotel then testified that she thought Appellant

---

[4] R. 135. All names other than those of counsel and the military judge are pseudonyms.

[5] R. at 127-28.

[6] R. at 128.

[7] R. at 148.

[8] R. at 175. At the time of the incident, LCpl Hotel was a private first class.

[9] R. at 176.

might have been joking about throwing the documents away, but instead saw Appellant put the documents into a shred bin below her desk.[10] On cross-examination, LCpl Hotel testified that plexiglass dividers in the IPAC office somewhat restricted her line of sight at the time of the incident, but she could see Appellant put documents into a shred bin. This was the final time anyone saw the documents.

LCpl Hotel reported this incident to Cpl Rho, their section non-commissioned officer-in-charge.[11] Appellant and Cpl Rho then got into an argument about the documents the next day. This alerted GySgt Ralph, the Staff Non-Commissioned Officer-in-Charge of the IPAC Deployments Section, who told Appellant and LCpl Hotel to find the documents. After a brief search, GySgt Ralph called them back. They did not find the documents.

Additional facts necessary to resolve Appellant's AOEs are discussed below.

## II. DISCUSSION

### A. Appellant's conviction is legally sufficient.

To determine legal sufficiency, a question we review de novo, we ask whether, "considering the evidence in the light most favorable to the prosecution, a reasonable fact-finder could have found all the essential elements beyond a reasonable doubt."[12] In conducting this analysis, we must "draw every reasonable inference from the evidence of record in favor of the prosecution."[13] "As such, the standard for legal sufficiency involves a very low threshold to sustain a conviction."[14]

#### 1. Article 92, Dereliction of Duty:

A violation of Article 92, UCMJ, Willful Dereliction of Duty has three elements: (1) that the accused had certain duties, (2) that the accused knew or reasonably should have known of the duties, and (3) that the accused was

---

[10] R. at 178.

[11] At the time of the incident, Cpl Rho was a lance corporal.

[12] *United States v. Turner*, 25 M.J. 324, 324 (C.M.A. 1987) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *see also United States v. Gutierrez*, 73 M.J. 172, 175 (C.A.A.F. 2014).

[13] *United States v. Nicola*, 78 M.J. 223, 226 (C.A.A.F. 2019) (quoting *United States v. McGinty*, 38 M.J. 131, 132 (C.M.A. 1993)) (internal quotation and citation omitted).

[14] *United States v. Smith*, 83 M.J. 350, 359 (C.A.A.F. 2023).

willfully derelict in the performance of those duties.[15] First, a duty may be imposed by treaty, statute, regulation, lawful order, SOP, or custom of the service.[16] Second, the accused must have known, or reasonably should have known of the duties. Knowledge of a duty can be shown via circumstantial evidence, and constructive knowledge can be shown through regulations, training, operating procedures, and related testimony.[17] Third, the accused must have been willfully derelict in the performance of those duties. Willful dereliction "refers to the doing of an act knowingly and purposefully, specifically intending the natural and probable consequences of an act."[18]

### 2. *Appellant's conviction is legally sufficient.*

We find Appellant's conviction legally sufficient. Appellant argues that the Government did not prove she failed to perform a certain duty. However, testimony from several witnesses indicated that processing MANs are part of the IPAC's SOP, and all Marines, including Appellant, were trained and instructed accordingly on the process. A SOP is sufficient to create a duty.[19] The documentary evidence and testimony regarding the SOP and how it is carried out on a daily basis was sufficient to establish a duty in this case. Both Cpl Rho and LCpl Hotel detailed how Marines, to include Appellant, who belonged to the deployments section are trained on the SOP.[20]

Viewing the evidence in the light most favorable to the prosecution, Appellant failed to perform her duty to ensure the processing of these documents when she discarded them in a shred bin. By discarding these documents, Appellant failed to process them, or to aid in their processing, and instead made it impossible for anyone to process these documents. Further, being unable to complete all aspects of processing the documents herself did not absolve her from responsibility for her role in processing the documents.

Appellant willfully failed to perform her duty and prevented the IPAC from fulfilling its duty. Appellant could have scanned the documents or told LCpl Hotel to scan them herself. LCpl Hotel's possible failure to perform her duty

---

[15] *Manual for Courts-Martial, United States* (2019 ed.) [MCM], pt. IV, para. 18.b.(3)(a-c) at IV-27.

[16] MCM, pt. IV, para 18.c.(3)(a) at IV-28.

[17] MCM, pt. IV, para 18.c.(3)(b) at IV-28.

[18] MCM, pt. IV, para 18.c.(3)(c) at IV-28.

[19] MCM, pt. IV, para 18.c.(3)(a) at IV-28.

[20] R. at 148, 172.

does not excuse Appellant from performing hers. We find the conviction is legally sufficient.

### B. The evidence is factually sufficient.

In order to trigger our duty to review a specification for factual sufficiency, an appellant must first make a request and show a specific deficiency in proof.[21] Once an appellant has satisfied these requirements, we are required to weigh the evidence "with appropriate deference to the fact that the [military judge] saw and heard the witnesses and other evidence" and "with appropriate deference to findings of fact entered into the record by the military judge."[22] We find that Appellant has made a showing sufficient to trigger our factual sufficiency review. However, in accordance with *United States v. Harvey*, after a complete review of the evidence, and after giving appropriate deference as required, we find that the Government presented sufficient evidence to prove Appellant's guilt beyond a reasonable doubt, and we are therefore not "clearly convinced that the finding of guilty was against the weight of the evidence." [23]

## III. CONCLUSION

After careful consideration of the record and briefs of appellate counsel, we have determined that the findings and sentence are correct in law and fact and that no error materially prejudicial to Appellant's substantial rights occurred.[24]

The findings and sentence are **AFFIRMED**.

FOR THE COURT:

MARK K. JAMISON
Clerk of Court

---

[21] 10 U.S.C. § 866(d)(1)(B).

[22] *Id.*

[23] *United States v. Harvey,*__ M.J. __, 2024 CAAF 502, at \*12-13 (C.A.A.F. Sep. 6, 2024).

[24] Articles 59 & 66, UCMJ.