*This opinion is subject to revision before publication.*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

———————————

## UNITED STATES
Appellant

**v.**

## Nicholas J. MOORE, Airman
United States Air Force, Appellee

**No. 25-0110**
Crim. App. No. 40442

Argued October 21, 2025—Decided January 23, 2026

Military Judges: Colin P. Eichenberger and Dayle P.
Percle (post-trial processing and remand)

For Appellant: *Colonel Matthew D. Talcott* (argued);
*Lieutenant Colonel Thomas J. Alford, Lieutenant
Colonel Jenny A. Liabenow*, and *Mary Ellen Payne*,
Esq. (on brief); *Major Kate E. Lee.*

For Appellee: *Major Megan R. Crouch* (argued);
*Megan P. Marinos*, Esq.

Judge MAGGS delivered the opinion of the Court, in
which Chief Judge OHLSON, Judge SPARKS, and
Judge JOHNSON joined. Judge HARDY filed a
separate opinion concurring in the judgment.

———————————

Judge MAGGS delivered the opinion of the Court.

A general court-martial found Appellee guilty, contrary to his pleas, of one specification of sexual assault without consent in violation of Article 120(b)(2)(A), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920(b)(2)(A) (2018). The United States Air Force Court of Criminal Appeals (AFCCA) set aside this finding on grounds that the evidence was legally and factually insufficient. *United States v. Moore*, No. ACM 40442 (f rev), 2024 CCA LEXIS 485, at *3, 2024 WL 4765303, at *1 (A.F. Ct. Crim. App. Nov. 13, 2024) (unpublished). Relying on this Court's recent decision in *United States v. Mendoza*, 85 M.J. 213 (C.A.A.F. 2024), the AFCCA reasoned that "the Government offered no evidence that [the alleged victim] was capable of consenting and did not consent." *Moore*, 2024 CCA LEXIS 485, at *17, 2024 WL 4765303, at *6. The AFCCA explained that the Government instead had offered evidence only that the alleged victim "was asleep, and therefore not capable of consenting when the sexual act occurred." *Id.*

Major General Rebecca R. Vernon, U.S. Air Force, certified the question "whether the Air Force Court of Criminal Appeals erred in applying *United States v. Mendoza* . . . to find appellee's sexual assault conviction legally and factually insufficient."[1] We answer this question in the affirmative. We hold that the evidence was legally sufficient, and because the AFCCA did not consider all applicable legal principles, we remand the case for a new factual sufficiency review consistent with this opinion.

---

[1] Major General Vernon's signature on the certificate for review is accompanied by this notation: "Performing The Duties Of The Judge Advocate General." Appellee filed a motion to compel discovery concerning Major General Vernon's authority to certify the case and her compliance with the notification requirements in Article 67(a)(2), UCMJ, 10 U.S.C. § 867(a)(2) (2024). This Court denied the motion. *United States v. Moore*, __ M.J. __ (C.A.A.F. 2025) (interlocutory order). After considering the parties' arguments, we are satisfied that this Court has jurisdiction here.

## I. Background

The specification of sexual assault in violation of Article 120(b)(2)(A), UCMJ, alleged that Appellee "[d]id, at or near Hill Air Force Base, Utah, on or about 8 February 2022, commit a sexual act upon Airman First Class [A.B.], by penetrating her vulva with his finger, with an intent to gratify his sexual desire, without the consent of Airman First Class [A.B.]."

A.B. testified at trial that she had never had a romantic relationship with Appellee. She further testified that Appellee was a "mutual friend" and that she and Appellee "didn't really go out and spend time together." A.B. denied that "anything ever romantic happened between [her] and Airman Moore," that she "ever felt like there was any sort of flirtation between the two of" them, and that she ever felt that Appellee "was making any sort of advances" toward her. On the contrary, A.B. testified that "everything . . . had strictly been platonic up until this point."

Turning to the night in question, A.B. testified that she hosted three airmen in her dorm room for an informal gathering that included eating dinner and watching television. She further testified that after the two other airmen departed, she and Appellee continued watching television while sitting next to each other on a couch.

A.B. testified that she and Appellee had some physical contact while they were watching television, explaining: "[M]y feet were brought onto the couch. It was a small couch, so my feet were, like, touching his leg a little bit." She further testified that Appellee then "lifted his feet up and actually put them . . . over [her]." But A.B. testified that she did not consider this odd because she "grew up around a bunch of brothers" and her "brothers would always do the same thing." She denied that she considered the action "any kind of flirtation or sexual advance." She denied that she was "pressing against him" when she fell asleep. She denied that there was any "cuddling" or

"spooning." A.B. further testified that she was fully dressed while on the couch.

A.B. testified that she fell asleep on the couch. She further testified that she awoke a short time later when she "felt Airman Moore inside of me," which she clarified to mean his fingers were "[i]nside of [her] vaginal area" and that they were "penetrating [her] vulva." She testified that she "could feel the physical sensation of those fingers being removed from [her] as he pulled his hand away." She testified that she did not "ever consent to that." She also testified that she discovered that pieces of her clothing had been removed.

A.B. testified that she pushed Appellee off her and asked, "[w]hat the [expletive] are you doing?" A.B. testified that Appellee responded, "You're right, you're right." A.B. testified that she told Appellee to leave her quarters and Appellee complied. A.B. testified that she then immediately ran crying to a friend's quarters. A nurse and four other witnesses testified that A.B. told them about the incident shortly after it occurred.

A general court-martial found Appellee guilty, contrary to his plea, of the specification of sexual assault without consent. Appellee was sentenced to a dishonorable discharge, confinement for eighteen months, forfeiture of all pay and allowances, and reduction to the grade of E-1. Appellee raised seven issues on appeal, but the AFCCA considered only Appellee's arguments that the evidence was legally and factually insufficient and that finding him guilty of sexual assault without consent based solely on evidence that A.B. was sleeping violated his due process rights. *Moore*, 2024 CCA LEXIS 485, at *2-3, 2024 WL 4765303, at *1. The AFCCA held that the evidence was legally insufficient because "the Government's evidence presented during Appell[ee]'s court-martial was limited to the fact that [A.B.] was asleep, and therefore not capable of consenting when the sexual act occurred." *Id.* at *17, 2024 WL 4765303, at *6. The AFCCA held that the evidence was factually insufficient "for the same reasons." *Id.* at *18,

2024 WL 4765303, at \*6.[2] Accordingly, the AFCCA set aside the finding of guilty and dismissed the charge and its specification with prejudice. *Id.*, 2024 WL 4765303, at \*6.

## II. Standard of Review

This Court reviews de novo the legal sufficiency of the evidence. *United States v. King*, 78 M.J. 218, 221 (C.A.A.F. 2019). "The test for legal sufficiency is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Gutierrez*, 73 M.J. 172, 175 (C.A.A.F. 2014) (internal quotation marks omitted) (quoting *United States v. Bennitt*, 72 M.J. 266, 268 (C.A.A.F. 2013)). This Court may review whether a Court of Criminal Appeals (CCA) applied "correct legal principles" in performing its factual sufficiency review. *United States v. Harvey*, 85 M.J. 127, 129 (C.A.A.F. 2024) (internal quotation marks omitted) (citation omitted).

## III. Discussion

Article 120(b)(2)(A), UCMJ, establishes the offense of sexual assault without consent. *Manual for Courts-Martial, United States* pt. IV, para. 60.a.(b)(2)(A) (2019 ed.) (*MCM*). It provides: "Any person subject to this chapter who— . . . (2) commits a sexual act upon another person— (A) without the consent of the other person . . . is guilty of sexual assault and shall be punished as a court-martial may direct." 10 U.S.C. § 920(b)(2)(A). The government therefore must prove two elements beyond a reasonable doubt: "(i) That the accused committed a sexual act upon another person; and (ii) That the accused did so without the consent of the other person." *MCM* pt. IV, para. 60.b.(2)(d)(i)-(ii).

---

[2] Although the AFCCA discussed the due process issue, it did not decide it. Appellee asserts in his brief that the AFCCA found a due process violation. We do not see this conclusion in the AFCCA's opinion.

Article 120(b)(2)(A), UCMJ, differs from Articles 120(b)(2)(B) and 120(b)(3)(A), UCMJ, which establish the offense of sexual assault of a person who is asleep, unconscious, or otherwise unaware the act is occurring and the offense of sexual assault when the other person is incapable of consenting, respectively. *MCM* pt. IV, paras. 60.b.(2)(e)-(f). Those two offenses do not contain a "without . . . consent" element. 10 U.S.C. §§ 920(b)(2)(B), 920(b)(3)(A). Instead, they require proof of an element that the victim was sleeping or that the victim was incapable of consenting because of impairment by an intoxicant. *Id.*

Here, the parties dispute the legal and factual sufficiency of the evidence to prove the "without . . . consent" element in Article 120(b)(2)(A), UCMJ. The Government argues that it proved this element through Appellee's own incriminating statements and "direct and circumstantial evidence showing that [A.B.] never gave consent before falling asleep, awoke as the nonconsensual sexual act was happening, physically and verbally resisted the ongoing sexual act, and promptly reported the offense." Appellee responds that the Government "cannot charge sexual assault without consent and then attempt to prove lack of consent solely by arguing the victim is incapable of consenting" because she was asleep. The victim's sleep, Appellee contends, would only be sufficient to establish an element of an offense if the Government had charged him with violating Article 120(b)(2)(B), UCMJ, which it did not.

## A. Governing Legal Principles

Having considered the parties' arguments, we are persuaded that the resolution of the certified question depends on the application of three legal principles.

The first legal principle is this Court's holding in *Mendoza*: "[T]he Government cannot . . . prove the absence of consent under Article 120(b)(2)(A), UCMJ, by *merely* establishing that the victim" was incapable of consenting at the time of the sexual act. *Mendoza*, 85 M.J. at 222 (emphasis added). The Court reasoned in *Mendoza* that if

the government could prove lack of consent merely by showing incapacity to consent, then other portions of Article 120, UCMJ, would become surplusage. *Id.* at 219-20. "[E]very sexual act committed upon a victim who is incapable of consenting under subsection (b)(3)(A)" because of intoxication, the Court explained, "would also qualify as a sexual assault under subsection (b)(2)(A) because the victim did not consent." *Id.* at 220. If that were so, then Article 120(b)(3)(A), UCMJ, would serve no purpose. *Id.*

In *Mendoza*, the government presented evidence that the alleged victim was *incapacitated by intoxication* at the time that the sexual act occurred. *Id.* at 221. In this case, by contrast, the Government presented evidence that A.B. was *asleep* at the time when the sexual act occurred. Appellee, however, argues that the reasoning in *Mendoza* should apply "equally to cases where the Government charges sexual assault without consent and then argues lack of consent is met because the victim was asleep." We are persuaded by this argument because we see no distinction between being unable to consent because of intoxication and being unable to consent because of sleep in this context. This is consistent with our reasoning in *United States v. Casillas*, where we explained that the government "could not prove lack of consent [under Article 120(b)(2)(B), UCMJ] by establishing that the victim was asleep at the time of the act." 86 M.J. 94, 102 (C.A.A.F. 2025). We thus conclude that the principle of *Mendoza* applies to cases involving sleeping victims.

The first legal principle has important consequences. In an uncontested case, a plea of guilty to a specification of sexual assault without consent in violation of Article 120(b)(2)(A), UCMJ, is not provident if the accused admits *solely* that the victim was sleeping or incapacitated when the sexual act occurred. In a contested case, if the accused moves for a finding of not guilty under Rule for Courts-Martial 917(a), the military judge may not deny the motion based *solely* on evidence that the victim was asleep or incapacitated. A military judge also may not instruct the members that they may find the "without . . . consent"

element to be proved beyond a reasonable doubt based *solely* on evidence that the victim was asleep or incapacitated. And on appeal, a CCA may not find that the evidence is factually sufficient to prove the "without . . . consent" element *solely* because the CCA finds that the evidence proved the victim was asleep or incapacitated. Similarly, neither a CCA nor this Court may hold that the evidence is legally sufficient to prove the "without . . . consent" element in Article 120(b)(2)(A), UCMJ, *solely* because there was evidence that the victim was asleep or incapacitated.

The second legal principle is this: If a rational trier of fact could find from the evidence *both* that the victim did not consent before falling asleep *and* that the sexual act subsequently occurred while the victim was asleep, the evidence is legally sufficient to prove the "without . . . consent" element of Article 120(b)(2)(A), UCMJ. We are persuaded by the Government's argument that this second legal principle logically flows from Article 120(g)(7)(B), UCMJ, which states: "A sleeping, unconscious, or incompetent person cannot consent." Put simply, if a victim *did not consent* to a sexual act before falling asleep, and the victim later *could not consent* to a sexual act while asleep, then a sexual act occurring while the victim is asleep is "without . . . consent."[3]

This second legal principle is consistent with Article 120(g)(7)(C), UCMJ, which provides that: "All the surrounding circumstances are to be considered in determining whether a person gave consent." Evidence that the alleged victim did not consent before falling asleep and evidence that the victim was asleep when the sexual act occurred are relevant surrounding circumstances.

---

[3] The Government expresses this logical reasoning as follows: If the "evidence showed there was no freely given agreement to any sexual act" before the victim fell asleep, the victim's "'default' state, therefore, which continued into her sleeping state, was that of no consent. While asleep, [the victim] remained in the same 'no consent' state since a 'sleeping . . . person cannot consent.'"

Together, they may establish the "without . . . consent" element.

The second legal principle is also consistent with *Mendoza*. When the government presents evidence that a person did not consent before falling asleep, the government is not attempting to prove the "without . . . consent" element "by *merely* establishing that the victim" was incapable of consenting. 85 M.J. at 222 (emphasis added). There is no surplusage problem because to prove a violation of Article 120(b)(2)(A), UCMJ, the government must prove a fact—namely, that the victim did not consent before falling asleep—that the government would not have to prove to establish a violation of Article 120(b)(2)(B), UCMJ.

The Court stated in *Mendoza* that "Article 120(b)(2)(A), UCMJ, criminalizes engaging in a sexual act with a person capable of consenting who did not consent, and Article 120(b)(3)(A), UCMJ, criminalizes engaging in a sexual act with a person who is incapable of consenting." 85 M.J. at 215.[4] This statement does not contradict the second legal principle because the Court emphasized that "our holding . . . *does not bar* the trier of fact from considering evidence of the victim's intoxication when determining whether the victim consented." *Id.* at 222 (emphasis added). Thus, the government can "offer[] evidence of an alleged victim's intoxication to prove the absence of consent." *Id.* But it cannot "prove the absence of consent

---

[4] This sentence does not mean that under Article 120(b)(2)(A), UCMJ, the sexual act must coincide with a period when the person upon whom the act is committed is capable of consenting. Rather, as explained above, it is legally sufficient if the victim does not consent to the sexual act prior to the start of a period of incapacity, such as that caused by intoxication or sleep, and the accused then commits the sexual act upon the victim during the period of incapacitation. Relatedly, Article 120(b)(2)(A), UCMJ, is not the legally appropriate offense to charge when the person upon whom the sexual act is committed is persistently incapable of consenting due to a mental disease or defect or a physical disability. *See* Article 120(b)(3)(B), UCMJ.

under Article 120(b)(2)(A), UCMJ, by merely establishing that the victim was too intoxicated to consent." *Id.* The same is true for sleep. The government can offer evidence of an alleged victim's sleep to prove the absence of consent, but it cannot prove the absence of consent *only* with evidence that the victim was asleep.

The second principle, to be clear, concerns only the question of legal sufficiency. Accordingly, in a given case, a trier of fact could find that the admitted evidence is insufficient to prove beyond a reasonable doubt that the victim did not consent before falling asleep. A CCA performing a factual sufficiency review on appeal could reach the same conclusion.

The third legal principle is this Court's holding in *Casillas*, 86 M.J. at 102: Evidence may be legally sufficient to prove the "without . . . consent" element if the evidence shows that the victim was asleep when the sexual act began but awoke before the sexual act was complete and, while awake, did not consent to the ongoing sexual act. In such cases, the government is not attempting to "prove the absence of consent under Article 120(b)(2)(A), UCMJ, by *merely* establishing that the victim" was incapable of consenting. *Mendoza*, 85 M.J. at 222 (emphasis added). Instead, the government is proving that a person who was awake during the sexual act did not consent, thus satisfying both elements of Article 120(b)(2)(A), UCMJ.

**B. Legal Sufficiency**

In the light of these three principles, we must consider whether the evidence was legally sufficient to prove that Appellee committed the offense of sexual assault in violation of Article 120(b)(2)(A), UCMJ. This offense, as explained above, has two elements: "(i) That the accused committed a sexual act upon another person; and (ii) That the accused did so without the consent of the other person." *MCM* pt. IV, para. 60.b.(2)(d)(i)-(ii). The question is whether any rational trier of fact could find the evidence sufficient to prove each of these elements beyond a reasonable doubt.

With respect to the first element, we conclude that the evidence is legally sufficient to prove that Appellee "committed a sexual act upon" A.B. A sexual act is defined to include any "penetration, however slight, of the vulva . . . of another by any part of the body . . . with an intent to . . . gratify the sexual desire of any person." Article 120(g)(1)(C), UCMJ. At trial, A.B. testified that Appellee's fingers were "[i]nside of [her] vaginal area" and that they were "penetrating [her] vulva." And drawing reasonable inferences from the circumstantial evidence, a reasonable trier of fact could infer that Appellee committed these acts with the requisite intent.

This brings us to the second element, "without . . . consent." The first legal principle discussed above prevents us from concluding that the evidence was legally sufficient *merely* because there was evidence that A.B. was asleep when the sexual assault occurred. But we hold that a reasonable trier of fact could find the "without . . . consent" element to be proved beyond a reasonable doubt in accordance with either the second or third legal principles discussed above.

The second legal principle, again, is that evidence is legally sufficient if it shows a lack of consent before a victim falls asleep even though the sexual act occurs while the victim is sleeping. In this case, a rational trier of fact could find that A.B. did not consent to the sexual act before she fell asleep based on her testimony that she did not "ever consent to that." A rational trier of fact could reach the same conclusion based on reasonable inferences drawn from A.B.'s testimony about the platonic nature of her acquaintance with Appellee and her interactions with him throughout the evening in question. And because A.B. could not change her lack of consent once she was asleep, a reasonable trier of fact could find that the sexual act occurred "without . . . consent."

The third legal principle is that evidence that the victim woke up while a sexual act was occurring and did not consent is legally sufficient to establish the "without . . . consent" element. Here, a reasonable trier of

fact could find that the sexual act occurred "without . . . consent" because A.B. testified that she awoke during the sexual assault and, while awake, immediately expressed her lack of consent. For these reasons, we hold that the evidence was legally sufficient.

## C. Factual Sufficiency

This Court, as explained above, can review the AFCCA's understanding of applicable legal principles. *Harvey*, 85 M.J. at 129. Here, the AFCCA stated that the evidence was factually insufficient "for the same reasons" that it was legally insufficient. *Moore*, 2024 CCA LEXIS 485, at \*18, 2024 WL 4765303, at \*6. Accordingly, if the AFCCA erred in its legal sufficiency analysis, it also erred in its factual sufficiency analysis.

We have concluded, contrary to the AFCCA, that the evidence was legally sufficient. Our conclusion differs because the AFCCA did not apply the second and third legal principles discussed above. This omission is understandable because the AFCCA rendered its decision before this Court clarified the second legal principle here and before this Court decided *Casillas*, which established the third legal principle. We therefore remand the case so that the AFCCA may conduct a new factual sufficiency review in accordance with this opinion.[5]

## IV. Conclusion

The certified question is answered in the affirmative. The decision of the United States Air Force Court of Criminal Appeals is set aside. The record is returned to the Judge Advocate General of the Air Force for remand to the Court of Criminal Appeals for a new review of the factual sufficiency of the evidence, consistent with this opinion,

---

[5] Because the AFCCA concluded that the evidence was legally and factually insufficient, it did not decide other questions that Appellee had raised. *Moore*, 2024 CCA LEXIS 485, at \*2-3, 2024 WL 4765303, at \*1. We express no opinion on these other issues. The AFCCA may consider these other questions on remand.

and to consider any other issues previously raised by Appellee before the lower court that were mooted by its prior decision.

Judge HARDY, concurring in the judgment.

For the reasons stated in *United States v. Casillas*, 86 M.J. 94 (C.A.A.F. 2025), I agree that the decision of the United States Air Force Court of Criminal Appeals should be set aside.