*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps Court of Criminal Appeals

Before
DALY, GROSS and de GROOT
_____

**UNITED STATES**
*Appellee*

**v.**

**Camron S. BAINES**
Private First Class (E-2), U.S. Marine Corps
*Appellant*

**No. 202400372**

_____

Decided: 31 March 2026

Military Judge:
Adam M. King (arraignment)
Matthew R. Brower (motions and trial)

Sentence adjudged 11 May 2024 by a general court-martial tried at Marine Corps Base Camp Foster, Okinawa, Japan, consisting of members with enlisted representation. Sentence in the Entry of Judgment: reduction to E-1, confinement for 3 years, and a bad-conduct discharge.

For Appellant:
*Captain Katherine E. Malcolm, USMC* (argued and on brief)

For Appellee:
*Commander John T. Cole, JAGC, USN* (argued and on brief)
*Major Mary Claire Finnen, USMC* (on brief)

Judge de GROOT delivered the opinion of the Court, in which Chief Judge DALY joined. Senior Judge GROSS filed a separate opinion concurring in the judgment.

_____

**This opinion does not serve as binding precedent, but may be cited as persuasive authority under NMCCA Rule of Appellate Procedure 30.2.**

_____

de GROOT, Judge:

Members, sitting as a general court-martial, convicted Appellant, contrary to his pleas, of two specifications of abusive sexual contact in violation of Article 120, and one specification of unlawful entry in violation of Article 129, Uniform Code of Military Justice (UCMJ).[1] Before us, Appellant raises four assignments of error (AOE); however, we only discuss two:

**I. Was the evidence legally sufficient to sustain the conviction for abusive sexual contact in violation of Article 120(d), UCMJ?**

**II. Was the evidence factually sufficient to sustain the conviction for abusive sexual contact in violation of Article 120(d), UCMJ?[2]**

After considering the record, the briefs of the parties, and the oral arguments of appellate counsel, we affirm.

## I. BACKGROUND

A group of friends including Corporal (Cpl) Golf and Appellant went to Cpl Whiskey's apartment located in the residential towers onboard Camp Foster

_____

[1] 10 U.S.C. §§ 920, 929. Appellant was found not guilty of one specification of sexual assault without consent.

[2] Appellant also raised the following AOEs: "Whether the evidence at trial created a fatal variance for the abusive sexual contact convictions requiring dismissal"? and "Did the military judge abuse his discretion when he admitted over defense objection testimony pursuant to M.R.E. 803(2)"? We carefully considered the matters raised by Appellant in his brief and find they do not require discussion or relief. *See United States v. Matias,* 25 M.J. 356, 361 (C.M.A. 1987).

in Okinawa.[3] Corporal Golf had never socialized alone with Appellant. They had only ever socialized in a group setting. That night, when Cpl Golf arrived at the apartment, Appellant was in the kitchen cooking, while Appellant's wife and stepdaughter were in the living room. Corporal Golf testified that the only interaction she had with Appellant that night was when she arrived and he offered her some food, which she declined.[4] Other friends showed up to include Cpl July, Lance Corporal (LCpl) Papa and LCpl Sierra. Corporal Golf and Cpl July had previously dated but were not in a romantic relationship at the time of the party. Corporal Golf testified that she had many drinks in a short amount of time and started to feel drunk and drowsy. She even went to the guest bathroom to vomit at one point.

Corporal July and Cpl Whiskey, both recognizing that Cpl Golf was intoxicated, helped her walk to the primary bedroom. Corporal Golf lay down on the bed and went to sleep. Corporal Whiskey testified that Cpl Golf was fully clothed when she lay down on top of the bed covers. Corporal July and Cpl Whiskey then turned off the light and left the room. Corporal Whiskey locked the door behind him. In fact, Cpl Whiskey had locked all the interior doors in his apartment, except for the guest bathroom, as he did not want anyone going into the other rooms. Corporal Whiskey explained that although the doors lock from the inside, one can unlock the doors from the outside using a coin.

Corporal Golf remembered Cpl Whiskey checking on her before he left the room, and she asked him or Cpl July to check on her in thirty minutes.[5] She next remembered hearing a knock at the door, and when the door opened, she assumed it was Cpl July and asked if it was him. Based on the response she received, Cpl Golf believed that Cpl July had entered the room. In fact, it was Appellant.

The room was dark, and Cpl Golf testified that when the person got onto the bed, she asked again if it was Cpl July and received a similar answer to make her believe that it was.[6] Appellant then put his arm around her, moved his arm under her shirt, and touched her breasts. Appellant, whom Cpl Golf still believed was Cpl July, subsequently moved his hand down her stomach to her groin area and touched her vagina over her clothes and then under her clothes.

---

[3] All names in this opinion, other than those of Appellant, the judges, and counsel, are pseudonyms.

[4] R. at 929.

[5] R. at 933.

[6] R. at 935.

Corporal Golf was surprised "Cpl July" would touch her in that way, and she further stated on cross-examination that if the real Cpl July had touched her, it would be wrong based on her level of intoxication.[7] When asked if she tried to stop "Cpl July" from touching her, Cpl Golf said she was going in and out of sleep while it was happening, and so she did not do anything. Corporal Golf said "But it's not because I didn't want to [stop him from touching me]. I didn't really feel, like, I could do anything."[8] Corporal Golf remembered "Cpl July" was trying to get her pants off when she heard someone knocking on the bedroom door, trying to get into the room, and then a crash. She remembered the adjoining bathroom door opening and closing, then Cpl July and Cpl Whiskey entering the room and turning on the lights. It was at this moment that Cpl Golf realized it was not Cpl July who had been touching her. Corporal July and Cpl Whiskey then knocked on the bathroom door, and Appellant opened it.

Appellant, in his interrogation with two Naval Criminal Investigative Service (NCIS) special agents, corroborated much of what Cpl Golf said in her testimony. Appellant stated that he saw Cpl Whiskey and Cpl July take Cpl Golf into Cpl Whiskey's bedroom. A short while after Cpl July and Cpl Whiskey returned to the living room, Appellant entered the primary bedroom. Initially, Appellant told the special agents that he entered the primary bedroom because he needed to use the restroom, and the one in the hallway was occupied. When the special agents challenged Appellant's story, however, he admitted that he unlocked the door using a small Japanese coin, entered the bedroom, and locked the door again. Appellant told the agents that he locked the door "[b]ecause I was going to do something I knew I shouldn't do."[9]

Appellant said that when Cpl Golf asked if Appellant was Cpl July, he responded affirmatively in order to get physically close to her. Appellant admitted to putting his hand under Cpl Golf's shirt, touching her breasts, and then touching her vagina in the manner similar to Cpl Golf's description. Appellant also said in his interrogation that when he was touching Cpl Golf's genitalia, she was just lying there but said stop several times, to include saying specifically, "Stop, [July]."[10] Appellant only stopped when he heard Cpl July and Cpl Whiskey enter the room.

---

[7] R. at 966.

[8] R. at 936.

[9] Pros. Ex. 3 at 33:40.

[10] Pros. Ex. 3 at 36:58–37:32.

Appellant was found guilty, contrary to his pleas, of the two specifications of abusive sexual contact and one specification of unlawful entry. Appellant argues that despite trial counsel charging Appellant under the theory of non-consent, the evidence presented and argued instead proved the alternate charging theories of incapable of consenting and false pretense, his convictions for abusive sexual contact are not legally or factually sufficient to sustain a conviction under the charged theory of non-consent to the sexual contact. We disagree.

## II. DISCUSSION

### A. The Evidence is Legally Sufficient to Sustain the Convictions for Abusive Sexual Contact

*1. Law*

We review de novo the legal sufficiency of the evidence.[11] "The test for legal sufficiency is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[12]

In *United States v. Mendoza*, the Court of Appeals for the Armed Forces (CAAF) agreed with the appellant and held that the government may not "charge one offense under one factual theory and then argue a different offense and a different factual theory at trial."[13] However, the CAAF disagreed with the appellant's view that in order for a conviction for sexual assault without consent to be legally sufficient, the government must prove at least one fact through direct evidence that the victim affirmatively did not consent to the sexual act.[14] The CAAF "reiterate[d] once again that the absence of direct evidence of an element of an offense does not prevent a finding of guilty for that offense from being legally sufficient."[15]

---

[11] *United States v. King*, 78 M.J. 218, 221 (C.A.A.F. 2019) (citing *United States v. Kearns*, 73 M.J. 177, 180 (C.A.A.F. 2014).

[12] *United States v. Gutierrez*, 73 M.J. 172, 175 (C.A.A.F. 2014) (quoting *United States v. Bennitt*, 72 M.J. 266, 268 (C.A.A.F. 2013).

[13] 85 M.J. 213, 220 (C.A.A.F. 2024).

[14] *Id.* at 217–18.

[15] *Id.* at 218.

In *United States v. Moore*, CAAF further clarified its holding in *Mendoza* in cases where an accused is charged under a theory of non-consent.[16] The CAAF provided three legal principles, to expound on its holdings in both *Mendoza* and *United States v. Casillas*.[17] The first legal principle is: "[T]he Government cannot . . . prove the absence of consent . . . by *merely* establishing that the victim was incapable of consenting at the time of the sexual act."[18] This Court cannot find that evidence of non-consent is legally or factually sufficient solely because there was evidence that the victim was incapacitated.[19] The second legal principle is: "If a rational trier of fact could find from the evidence *both* that the victim did not consent before falling asleep *and* that the sexual act subsequently occurred while the victim was asleep, the evidence is legally sufficient to prove the 'without . . . consent' element of Article 120(b)(2)(A), UCMJ."[20] This principle only concerns questions of legal sufficiency, as a trier of fact could determine that the government did not prove beyond a reasonable doubt that a victim did not consent before falling asleep. "A CCA performing a factual sufficiency review on appeal could reach the same conclusion."[21] The third legal principle is: "Evidence may be legally sufficient to prove the 'without . . . consent' element if the evidence shows that the victim was asleep when the sexual act began but awoke before the sexual act was complete and, while awake, did not consent to the ongoing sexual act."[22]

### 2. Analysis

We find the evidence is legally sufficient to sustain the convictions in this case. The offense of abusive sexual contact requires the government to prove beyond a reasonable doubt: "(i) That the accused committed sexual contact upon another person; and (ii) That the accused did so without the consent of the other person."[23] In this case, Appellant was found guilty of touching Cpl

---

[16] __ M.J. __, No. 25-0110, 2026 CAAF LEXIS 73 (C.A.A.F. Jan. 23, 2026).

[17] 86 M.J. 94 (C.A.A.F. 2025).

[18] *Moore*, __ M.J. __, 2026 CAAF LEXIS 73, at *8.

[19] *Id.* at *9.

[20] *Id.* (emphasis in original).

[21] *Id.* at *12.

[22] *Id.* at *12–13; *see also Casillas*, 86 M.J. at 102.

[23] *Manual for Courts-Martial, United States* (2024 ed.) (MCM), pt. IV, para. 60.b.(4)(d)(i)-(ii) at IV-88–89.

Golf's breasts and vagina without her consent.[24] Corporal Golf testified she remembered that a person entered the room, climbed onto the bed, put his hand under her shirt, touched her breasts and then touched her vagina both over and under her clothing.[25] This is corroborated by Appellant in his NCIS interview. Appellant admitted to touching Cpl Golf's breasts and vagina in a similar manner to Cpl Golf's testimony.[26]

Coupled with the nature of the touching itself, the Government presented circumstantial evidence (beyond the nature of the touching itself), to include a text message as evidence of Appellant's interest in Cpl Golf, to show that Appellant's intent was to gratify his own sexual desire.[27] Appellant's own admissions to the special agents that he unlocked the door to the master bedroom and then locked it "because [he] wanted to do something [he] knew [he] shouldn't do"[28] and with a plan to touch Cpl Golf.[29] These are independent pieces evidence of that same intent. A rational trier of fact could find that Appellant had the intent to gratify his sexual desire.

Regarding the second element, Appellant and Cpl Golf had no prior romantic or intimate relationship outside of casually socializing with a group of friends, nor was there any indication that night that she was interested in him. Although she was going in and out of sleep or consciousness likely due to her intoxication, Cpl Golf was awake and aware of what Appellant was doing but felt she could not do anything to stop it. She testified that she did not want to be touched. In his own statement, Appellant said Cpl Golf told him to stop several times when she mistakenly thought her assailant was Cpl July. In fact, Appellant stopped only when Cpl July and Cpl Whiskey tried to get into the room that Appellant had locked from the inside.[30]

---

[24] Entry of Judgment.

[25] R. at 936–38.

[26] Pros. Ex. 3 at 34:40–37:00.

[27] Pros. Ex. 5. Trial counsel introduced a text message between Appellant and Cpl Golf, in which Appellant appeared to be making an overture for a date, to show Appellant's attraction to Cpl Golf. However, Cpl Golf testified she never had any romantic interest in him. R. at 912.

[28] Pros. Ex. 3 at 33:35.

[29] Pros. Ex. 3 at 33:59.

[30] Pros. Ex. 3 at 44:50.

Applying the legal principles in *Moore* to the evidence and viewing the evidence in the light most favorable to the prosecution, we find a rational trier of fact could believe beyond a reasonable doubt that Cpl Golf did not consent to Appellant touching her breasts or vagina. Therefore, the evidence is legally sufficient.

**B. The Evidence is Factually Sufficient to Sustain the Convictions for Abusive Sexual Contact**

*1. Law*

Under Article 66, UCMJ, this Court "may consider whether the finding is correct in fact upon request of the accused if the accused makes a specific showing of a deficiency in proof." In *United States v. Valencia*, this Court held that "a general disagreement with a verdict falls short of a specific showing of a deficiency in proof and thus will not trigger a full factual sufficiency analysis. Rather, an appellant must identify a weakness in the evidence admitted at trial to support an element . . . and explain why, on balance, the evidence (or lack thereof) admitted at trial contradicts a guilty finding."[31]

*2. Analysis*

Appellant points to the lack of victim and witness credibility based on general inconsistencies within their testimony, but Appellant does not identify how specific inconsistencies between the various witnesses' testimony undermine the evidence provided in support of an element of the offense. Disagreeing with how the trier of fact weighed the credibility of the witnesses in determining the verdict, without more, is not a specific showing of a deficiency of proof.[32] Appellant further argues that the evidence the Government presented proves that Cpl Golf consented to sexual activity with the person she believed to be Cpl July, which would be the theory of false pretense and render the finding of the criminal liability of non-consent factually insufficient. "While believing the person touching her was Cpl July, she did not ask him to stop, say no, push him away, try to get away from him, kick or hit him, cry, scream, or call for help."[33] At oral argument, Appellant's counsel further argued that in this case the lack of communication as to consent was in fact consent to the sexual activity. We disagree. Appellant's incorrect statement of the law and truncated

---

[31] 85 M.J. 529, 535 (N-M. Ct. Crim. App. 2024).

[32] *See Valencia*, 85 M.J. at 535.

[33] Appellant's Reply Brief at 9–10.

view of the evidence is not a specific deficiency of proof.[34] While Cpl Golf did not testify that she said "no" to the person she believed was Cpl July, Appellant admitted that Cpl Golf said "stop" several times to include saying "Stop, [July]." Appellate reinterpretation of the evidence presented at trial is insufficient. Accordingly, we find Appellant did not meet the threshold requirement of making a specific showing of a deficiency of proof to trigger a factual sufficiency review. However, even if we did find the threshold factor was met to trigger a factual sufficiency review, after weighing the evidence and giving appropriate deference to the types of evidence presented, we are not clearly convinced that the findings of guilty for the offenses at issue are against the weight of the evidence.[35]

## III. CONCLUSION

After careful consideration of the record, the briefs of appellate counsel, and oral argument, we find the findings are correct in law, and no error materially prejudicial to Appellant's substantial rights occurred.

The findings and sentence are **AFFIRMED.**[36]

---

[34] *See* Article 120(g)(7)(A) (The term "consent" means a freely given agreement to the conduct at issue by a competent person. . . . Lack of verbal or physical resistance does not constitute consent.")

[35] *See* Article 66(d)(1)(B)(ii)(I), UCMJ; *see also United States v. Harvey*, 85 M.J. 127, 130–31 (C.A.A.F. 2024).

[36] Articles 59 and 66, UCMJ.

GROSS, S.J., concurring in the judgment :

I fully concur with the Court's decision that Appellant's convictions are correct in law. I write separately because I find that Appellant's brief did meet the minimal threshold requirement of making a specific showing of a deficiency of proof to trigger our review of the factual sufficiency of his convictions. Having completed that review, I find Appellant's claims of factual insufficiency are not borne out by the record. The evidence and testimony admitted at trial fully support the members' conclusion that the Government proved that the victim did not consent to the sexual conduct at issue. Accordingly, Appellant's conviction are correct in law and fact, and no error materially prejudicial to Appellant's substantial rights occurred.



FOR THE COURT:

MARK K. JAMISON
Clerk of Court